**SONOCO PRODUCTS COMPANY, Plaintiff,**

v.

**INTEPLAST CORP., Advance Polybag, Incorporated, Superbag Corp., and Omega Plastics Corporation, Defendants.**

Civ. A. No. 4–93–2442–22.

United States District Court, D. South Carolina, Florence Division.

June 27, 1994.

Elizabeth Anne Carpentier, William Clarence Boyd, Harold Simmons Tate, Jr., Columbia, SC, John H. Thomas, Charles B. Park, III, Blas P. Arroyo, Charlotte, NC, for plaintiff.

John B. Hardaway, Greenville, SC, for Inteplast.

Jon René Josey, Florence, SC, Janet L. Carter, Myrtle Beach, SC, for Advance Polybag.

Gerald Michael Finkel, Edward A. Frazier, Columbia, SC, for Superbag.

Howell V. Bellamy, Jr., Myrtle Beach, SC, John Daniel, Robert Schaffer, NY City, Janet L. Carter, Myrtle Beach, SC, for Omega.

## ORDER

CURRIE, District Judge.

Before the court is the motion of Defendant Inteplast Corporation to dismiss this action for lack of personal jurisdiction, insufficiency of service of process, and improper venue. For reasons discussed more fully below, the motion is denied.

## I. FACTS

Plaintiff Sonoco Products Company ("Sonoco"), a South Carolina corporation with its principal place of business in Hartsville, South Carolina, instituted this action for patent infringement against the four defendants.[1] Sonoco alleges that Defendants infringed a patent relating to a highly successful plastic grocery bag and bag dispensing system known as "Quickmate." Defendant Inteplast Corporation ("Inteplast"), a Delaware corporation with its principal place of business in Livingston, New Jersey, is a holding company which does not manufacture bag products. Inteplast, however, is the sole owner of Integrated Bagging Systems Corporation ("Integrated Bagging"), which manufactures plastic bags. Integrated Bagging is a Delaware corporation with its principal place of business in Lolita, Texas.

Mr. Tony Tseng, the Marketing Director for both Inteplast and Integrated Bagging,[2] was deposed for the purpose of determining Inteplast's contacts with this forum. Mr. Tseng coordinates all marketing and shipments of plastic grocery bag products manufactured by Integrated Bagging. Integrated Bagging has no marketing or sales force of its own. Mr. Tseng stated that all accounting records for Integrated Bagging are maintained at Inteplast's headquarters in Livingston, New Jersey.

According to Mr. Tseng, Inteplast has appointed distributors located in Atlanta, New York, Houston, Chicago, and Los Angeles to distribute its plastic grocery bag products. The retail customer (*i.e.*, a supermarket) generally places its order with a distributor who then relays the order to Inteplast's headquarters. Inteplast then schedules the shipment of the goods from Integrated Bagging's Texas facility. Based upon the terms of the order, Integrated Bagging either ships the products to the distributor or directly to the

---

1. Sonoco also has sued other defendants who have allegedly infringed its patent in an action in the Central District of California entitled *Sonoco Products Co. v. Durabag Co., Inc., et al.,* C/A No. 2:93–4929 (C.D.Cal.). After initiation of this action, Inteplast instituted an action in New Jersey entitled *Inteplast Corp. v. Sonoco Products Co.,* C/A No. 2:93–5381 (D.N.J.), but that action was voluntarily dismissed. Defendant Superbag Cor-

poration made a motion before the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407 to transfer this case to the Central District of California for coordinated or consolidated pretrial proceedings. The Panel denied this motion on May 26, 1994.

2. Mr. Tseng's salary is paid solely by Inteplast.

customer's warehouse. The distributors are not assigned a specific territory. Instead, they are allowed to solicit sales of the allegedly infringing products from supermarket chains across the country. Mr. Tseng admitted that he knows that many of the supermarket chains who were sold the allegedly infringing products have stores located in several states and that the grocery bags would be distributed for use at the various stores.

Inteplast records reveal that its plastic bag products have been shipped to eight customers located in North Carolina. One of these customers is Ingles Markets, Inc. ("Ingles"): Ingles is headquartered in Asheville, North Carolina and operates retail supermarkets in five states, including South Carolina. Sonoco is competing with Inteplast to supply plastic grocery bags to Ingles. Inteplast's plastic grocery bags were found in an Ingles grocery store in Spartanburg, South Carolina. Additional plastic bags marketed by or on behalf of Inteplast were discovered in a Piggly Wiggly grocery store located in Charleston, South Carolina.

Additionally, Inteplast has sold plastic bag products and shipped these products to its affiliate, Nan Ya Plastics Corporation, in Lake City, South Carolina. Inteplast shares its headquarters in New Jersey with Nan Ya Plastics. Inteplast's shipments to Nan Ya Plastics are part of a company program which allows employees residing in South Carolina to purchase plastic trash can liners from the company.

## II. DISCUSSION

■ A court can exercise personal jurisdiction over a defendant if (1) the defendant's conduct satisfies the requirements of the forum's long-arm statute and (2) the defendant's conduct satisfies the minimum contacts requirements of the Due Process Clause so that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. The court finds that both requirements are met.

■ Under South Carolina law, the first requirement collapses into the second. The South Carolina long-arm statute, S.C.Code Ann. §§ 36-2-801—809, has been interpreted to reach to the limits of due process. *See e.g., Southern Plastics Co. v. Southern Commerce Bank,* —— S.C. ——, ——, 423 S.E.2d 128, 130 (1992); *Atlantic Soft Drink Co. v. South Carolina Nat'l Bank,* 287 S.C. 228, 231, 336 S.E.2d 876, 878 (1985); *Hardy v. Pioneer Parachute Co., Inc.,* 531 F.2d 193, 195 (4th Cir.1976). Therefore, the determination of personal jurisdiction in South Carolina compresses into a due process assessment of minimum contacts and fair play.

The applicable law in this patent infringement case was recently set forth in *Beverly Hills Fan Company v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed.Cir.1994).[3] Significantly, in *Beverly Hills Fan Company,* the Federal Circuit found that personal jurisdiction existed under a "stream of commerce" theory.

Plaintiff Beverly Hills Fan Company, a ceiling fan manufacturer, was a Delaware corporation with its principal place of business in California. One of the defendants in *Beverly Hills Fan Company,* Ultec, was a competing ceiling fan manufacturer who allegedly infringed Beverly's patent. Ultec was a Chinese corporation which manufactured the allegedly infringing fans in Taiwan. The other defendant, Royal Sovereign Corporation, a New Jersey corporation, imported into and distributed the allegedly infringing fans in the United States. *Beverly Hills Fan Company,* 21 F.3d at 1559-60. Beverly sued Defendants in the Eastern District of Virginia. Neither of the defendants maintained any place of business in Virginia. *Id.*

Defendants moved to dismiss the action for lack of personal jurisdiction. In accompanying affidavits, Defendants claimed no significant contacts with Virginia. Ultec's president stated that the company "has no assets or employees located in Virginia; has no agent for service of process in Virginia; does

---

**3.** "The creation and application of a uniform body of Federal Circuit law in this area would clearly promote judicial efficiency, would be consistent with our mandate, and would not create

undue conflict and confusion at the district court level. Under circumstances such as these, we have held we owe no special deference to regional circuit law." *Id.,* 21 F.3d at 1564-65.

not have a license to do business in Virginia and has not directly shipped the accused fan into Virginia." *Id.* Royal submitted a similar affidavit by its president which stated that it has no assets or employees located in Virginia; has no agent for service of process in Virginia; does not have a license to do business in Virginia; made a one time sale of unrelated goods to Virginia in 1991 which represented less than three percent of Royal's total sales that year; and has not sold the accused fan to distributors or anyone else in Virginia." *Id.*

Beverly submitted several affidavits in opposition to the motion to dismiss. A private investigator stated that he purchased one of the fans from a retail outlet, Builder's Square, in Virginia which identified Royal as the source of the fan and that Royal warranted the fan. *Beverly Hills Fan Company,* 21 F.3d at 1560–61. Beverly's president stated that Beverly, although not a resident of the forum, conducted substantial business in Virginia and that it sold to the same retail accounts where the allegedly infringing fans were being sold. *Id.* An additional affidavit submitted in support of a motion to reconsider stated that fifty-two accused fans were available for sale in the six Builder's Square retail outlets in Virginia. *Id.* The *Beverly Hills Fan Company* opinion discloses no evidence that the fans were delivered directly to Builder's Square by the defendants. The district court granted the motion to dismiss and denied a motion for reconsideration.

In its opinion the Federal Circuit identified the issue on appeal as "whether the Due Process Clause of the Federal Constitution or specific limiting provisions in Virginia's long-arm statute preclude the exercise of jurisdiction in a case in which an alleged foreign infringer's sole contact with the forum resulted from indirect shipments through the stream of commerce." *Beverly Hills Fan Company,* 21 F.3d at 1564. Prior to resolving the issue, the Federal Circuit noted that although the action arose in the Fourth Circuit, Fourth Circuit law regarding personal jurisdiction did not control. *Id.* The Federal Circuit held that although the question of personal jurisdiction is procedural in nature, it is "a critical determinant of whether and in

what forum a patentee can seek redress for infringement of its rights." *Id.* The court then proceeded to establish guidelines to resolve personal jurisdiction questions in patent cases.

In reaching its decision, the Federal Circuit considered Supreme Court cases on personal jurisdiction and Court of Appeals decisions addressing the stream of commerce theory in intellectual property cases. *Beverly Hills Fan Company,* 21 F.3d at 1564–68. The court found the exercise of personal jurisdiction over the defendants would be proper in Virginia even in the absence of any direct evidence the defendants purposefully or knowingly shipped the fans into the jurisdiction. The Federal Circuit found that the presence of the fans in Virginia evidenced an apparent ongoing commercial relationship with Builder's Square. *Beverly Hills Fan Company,* 21 F.3d at 1564–68. The defendants argued that their contacts with Virginia were insufficient to given them warning that litigation might ensue. The Federal Circuit disagreed and explained: "The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. No more is usually required to establish specific jurisdiction." *Beverly Hills Fan Company,* 21 F.3d at 1565.

This Court finds the *Beverly Hills Fan Company* opinion controlling and dispositive in the present case. The facts in the present case reveal that Inteplast established ongoing relationships that caused the distribution and use of its products in South Carolina. Inteplast was aware that the grocery bags that Integrated Bagging, its wholly-owned subsidiary, delivered to warehouses owned by supermarket chains would be further distributed for use at a variety of retail locations. There is evidence that the accused plastic bag products have been shipped to eight customers located in North Carolina. One of these customers, Ingles, is headquartered in Asheville, North Carolina and has stores in both North Carolina and South Carolina. There is evidence that Inteplast or Integrated Bagging shipped directly to the Ingles warehouse in North Carolina. Inteplast does not deny that the accused products

have been used in Ingles' stores in South Carolina. Furthermore, just as in *Beverly Hills Fan Company*, there is evidence that the alleged infringer, Inteplast, and the patent holder, Sonoco, are in competition for the same account, Ingles. The presence of the plastic bags in South Carolina and the evidence that Inteplast purposefully shipped the accused bags into South Carolina through an established distribution channel makes the exercise of personal jurisdiction over Inteplast proper. No more is usually required to establish specific jurisdiction. *See Beverly Hills Fan Company*, 21 F.3d at 1565–66.

Inteplast attempts to distinguish *Beverly Hills Fan Company* from the present case by pointing out that its bags are only being used in South Carolina and not being resold in South Carolina. This distinction is not significant. The Patent Act provides that "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent thereof, infringes the patent." 35 U.S.C. § 271(a). The Patent Act also provides that one who induces infringement of a patent or sells a component of a patent machine knowing it is adapted for use in infringement of the patent shall be liable as an infringer. 35 U.S.C. § 271(b)–(c). Inteplast created a nationwide distribution system which resulted in the use of its plastic bags in at least two supermarket chains, Ingles and Piggly Wiggly, in South Carolina. Therefore, it has contributed to alleged acts of infringement that have occurred in South Carolina through the use of the accused products in the supermarkets in South Carolina.

The court also notes that an additional factor that supports the exercise of jurisdiction is Sonoco's South Carolina citizenship and residence. In *Beverly Hills Fan Company* the Federal Circuit allowed the exercise of jurisdiction over the defendants even though Beverly was not a resident of Virginia. In this case, the interests in Sonoco and the forum state are more compelling because Sonoco's headquarters and principal place of business are in South Carolina.

4. The court's determination that the exercise of personal jurisdiction over Inteplast is proper renders Inteplast's arguments regarding insufficiency of service of process and improper venue

### III. CONCLUSION

For the foregoing reasons, the court concludes that the exercise of jurisdiction over Inteplast Corporation is proper and denies the motion to dismiss of Inteplast.[4]

IT IS SO ORDERED.

meritless because those arguments are premised upon the court lacking personal jurisdiction over Inteplast.