**DRAYTON ENTERPRISES, L.L.C., Plaintiff,**

v.

**Myron DUNKER and Value–Added Products, Defendants.**

No. A3–00–159.

United States District Court, D. North Dakota, Southeastern Division.

March 30, 2001.

---

5. The Court asked the parties to submit additional briefing on this point.

Stephen W. Plambeck, Douglas W. Gigler, Nilles, Hansen & Davies, Ltd., Fargo, ND, for Drayton Enterprises L.L.C.

Eric A. Bartsch, Jonathan C. Miesen, Lindquist & Vennum, Minneapolis, MN, for Myron Dunker, Value–Added Products.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

### I. Introduction

Before the Court is defendants' motion to dismiss (doc. # 21). Plaintiff resists the motion (doc. # 27). For the reasons set forth below, the motion is **DENIED.** However, as explained below, the Court **ORDERS THIS CASE TRANSFERRED TO THE WESTERN DISTRICT OF OKLAHOMA** pursuant to 28 U.S.C. § 1406(a).

### II. Background

Plaintiff Drayton Enterprises is a North Dakota company based in Fargo. It is engaged in the business of manufacturing and distributing food and bakery products. Among these are "pre-proofed" frozen dough products, including breads and pizza crusts, which go directly from freezer to oven without thawing. Defendant Value–Added Products (VAP) is an Oklahoma cooperative based in Alva, OK. VAP also distributes bakery goods, including "pre-proofed" products. Defendant Dunker is an employee of VAP who once worked for Drayton.

Drayton initiated this litigation alleging, essentially, that defendant Dunker had disclosed trade secrets to VAP in violation of a confidentiality agreement and that VAP interfered with this contract and thereby wrongfully obtained trade secrets. It then moved for a preliminary injunction, which defendants opposed (doc.'s # 4, 13). The Court held a hearing on the preliminary injunction on January 4, 2001, and issued an order a few days later denying the injunction (doc. # 25). Before the hearing commenced, defendants filed this motion, arguing lack of personal jurisdiction, improper venue, and asserting a contractual agreement to arbitrate (doc.'s # 21, 22). Notably, this was the first filing by defendants other than their opposition to the injunction.

### III. Analysis

#### A. Personal jurisdiction

Defendants initially seek dismissal for lack of personal jurisdiction. They argue

they do not have the minimum contacts with North Dakota to be subject to jurisdiction here. Plaintiff, contrarily, argues that defendants are subject to specific jurisdiction in North Dakota since it was foreseeable the alleged disclosures would cause injuries in North Dakota, especially since Dunker had previously signed confidentiality agreements in North Dakota. Additionally, however, plaintiff argues defendants waived their objections to personal jurisdiction—and venue, as discussed below—by participating in the preliminary injunction hearing. In reply, defendants urge that they did not waive their objections to jurisdiction or venue.

### 1. Defendants did not waive jurisdictional objections

First, the Court concludes that defendants did not waive their objections to personal jurisdiction or, for the same reasons, venue. Initially, the Court notes that, in its view, defendants complied with the requirements of Rule 12. That rule essentially requires parties to assert the defenses of lack of personal jurisdiction and venue in their first responsive pleading; failure to do so waives them.

Here, defendants noted in their first submission—a brief opposing the motion for a temporary injunction—that they were not waiving their objections to venue and personal jurisdiction. Def.'s Resp. Br. at 15. While this might not always suffice to preserve such objections, the Court believes it does so in a case such as this. Defendants were obliged to respond to the motion for a temporary injunction in fairly short order—they replied within one week of the motion, and the hearing was held shortly thereafter. In this context, in which a defendant must defensively litigate one issue quickly, it is reasonable to preserve objections as these defendants did.

Further, defendants did in fact file this motion to dismiss prior to the injunction hearing. The motion thus also precededany answer or other substantive filings distinct from the temporary injunction issue (there have been none). Thus, defendants' participation in this case has consisted of resisting a preliminary injunction, which they had to do quickly and in which they referenced these defenses, and filing the instant motion. The Court holds that, under these circumstances, defendants have complied with Rule 12.

The Court also believes this position supported by analogous case law. The parties have been unable to cite a case strictly controlling the issue, and the Court has not located one. Plaintiff cites *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543 (3d Cir.1967), for the proposition that "a party who participates in [a hearing for an injunction] must be deemed to have waived the defense of lack of personal jurisdiction." *Id.* at 547. Plaintiff asserts that *Loser*, and several cases essentially following it, control the issue here.

However, there are at least two problems with following *Loser*. First, as defendants point out, there are general questions about the soundness of the rule *Loser* enunciates. See generally *Precision Etchings & Findings v. LGP Gem*, 953 F.2d 21, 25 (1st Cir.1992). More importantly, however, is that the case is factually distinguishable: Defendants here both sought to preserve their objection in the first pleading and then raised the issue in their first substantive responsive pleading before the hearing was held. These facts remove the case from the *Loser* holding. See *Loser*, 376 F.2d at 547 (noting defendants had participated in the hearing prior to raising objections).

For its part, plaintiff points to a series of opinions holding that a defendant has

not waived its objections by participation in a pretrial motion hearing. See, e.g., *Precision Etchings*, 953 F.2d at 25 (finding no waiver in context of default hearing); *Northeastern Land Serv.'s, Ltd. v. Schulke*, 988 F.Supp. 54, 58 (D.R.I.1997) (finding no pre-injunction hearing waiver). While each of these cases is factually distinguishable from the instant case, the Court believes the general rule they reflect is a sound one. Thus, the Court holds that defendants here did not waive their personal jurisdiction and venue objections because they preserved them in their first pleading (opposing the preliminary injunction) and asserted them in their first substantive responsive pleading (this motion), filed prior to the preliminary injunction hearing.

### 2. The Court lacks personal jurisdiction over defendants

#### a. Applicable standards

■ Personal jurisdiction exists in the federal district of North Dakota if (1) the North Dakota long-arm statute is satisfied and (2) the exercise of jurisdiction over defendants would not violate the due process clause of the Fourteenth Amendment. See *Guinness Import Co. v. Mark VII Distrib., Inc., et. al.*, 153 F.3d 607, 613–14 (8th Cir.1998). North Dakota's long-arm statute has been interpreted to permit the exercise of personal jurisdiction to the fullest extent permitted by due process. See *Hebron Brick Co. v. Robinson Brick and Tile Co.*, 234 N.W.2d 250, 255–56 (N.D. 1975). Thus, this Court is constrained only by the dictates of due process. *Id.*

■ The due process clause limits the ability of a forum state to assert personal jurisdiction over a nonresident defendant. *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir.1990). Before the exercise of personal jurisdiction is proper, due process requires that the de-

fendant have "minimum contacts" with the forum state such that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations and citations omitted). In examining "minimum contacts," it is essential that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotations and citations omitted). Finally, the contacts must not be random, fortuitous, attenuated, or the result of unilateral activity of a third party. See *id.*

■ If the Court determines that the defendant purposefully established minimum contacts with the forum state, it must still determine whether the exercise of personal jurisdiction over the defendant comports with "fair play and substantial justice." *Id.* at 476, 105 S.Ct. 2174. As set out by the Eighth Circuit, the factors to consider include: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Guinness Import*, 153 F.3d at 614. The first three factors are more important than the last two. *Id.*

■ "To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Digi–Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.*, 89 F.3d 519, 522 (8th Cir.1996). In examining the prima facie

showing, this Court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Id.*

Finally, a plaintiff need make a more limited showing of jurisdiction when it seeks to exercise specific jurisdiction, not general jurisdiction. As the Eighth Circuit has explained, "General jurisdiction refers to the power of a state to adjudicate any cause of action and does not depend on the relationship between the cause of action and the contacts." *Burlington Indus., Inc. v. Maples Indus.*, 97 F.3d 1100, 1103 (8th Cir.1996). Specific jurisdiction, contrarily, focuses solely on the defendant's activities in the forum state and "is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Id.*

### b. Application

Defendants urge that jurisdiction is improper since they have virtually no connection to North Dakota. VAP is an Oklahoma cooperative with offices in Oklahoma. It uses Oklahoma winter wheat as its main ingredient. It has no offices, agents, employees, or property in North Dakota, and it neither ships to nor receives products from North Dakota. Further, Dunker is a resident of Oklahoma; he was a resident of Minnesota when hired by VAP; he owns no property in North Dakota; he has not worked in North Dakota for four years; and, if he revealed trade secrets, he did so in Oklahoma. Plaintiff does not contest these basic facts about defendants.

Applying the above standards to these facts, the Court finds the first two factors—the nature and quality of contacts with the forum state and the quantity of such contacts—weigh against assertion of North Dakota jurisdiction. *Guinness Import*, 153 F.3d at 614. In short, the only connection VAP has with North Dakota is Dunker; it does not now have, nor has it ever had, any other contact with the state, even a random or fortuitous one. Further, Dunker was living in Minnesota at the time VAP hired him, meaning VAP did not reach into North Dakota to obtain Dunker. Moreover, while Dunker had previously had North Dakota contacts, he had cut them all by the time VAP hired him, bar of course the contract at issue here. Therefore, his contacts with the state are at best distant and attenuated. It is therefore clear that this Court could not possibly exercise general jurisdiction over defendants, as plaintiff's papers seem to recognize: The nature and quantity of their contacts would not support such an assertion of jurisdiction. See *Burlington*, 97 F.3d at 1103.

The third factor—relation of the action to the contacts—is thus the sole theoretical basis for asserting jurisdiction over defendants. *Guinness Import*, 153 F.3d at 614. This is essentially the question of specific jurisdiction. See *Burlington*, 97 F.3d at 1102 (discussing specific jurisdiction). The focus must therefore be on the contract, the trade secrets it protected, and defendants' alleged role in obtaining and disclosing them. The question is whether the acts giving rise to the lawsuit—the hiring of Dunker for the alleged purpose of obtaining trade secrets gained in North Dakota and protected by a North Dakota contract—constitute minimum contacts sufficient to convey specific jurisdiction. While recognizing this is a difficult case, the Court concludes they are not.

A review of the facts concerning the relation between the cause of action and defendants' contacts with North Dakota—all undisputed—will help frame the Court's analysis. Dunker worked for Drayton in North Dakota from August 1996 until Au-

gust 1997. In that role he was entrusted with trade secrets and other proprietary information, which he had contracted to keep secret. He voluntarily left Drayton in 1997, at which point he signed another contract in North Dakota protecting those trade secrets. He then moved to Minnesota, where he resided for two years. In 1999, Dunker was hired by VAP; he moved to Oklahoma and now performs work similar to what he did for Drayton. Drayton alleges that Dunker has revealed its trade secrets to VAP, and that VAP hired him with the secrets in mind. While Dunker and VAP deny this, there seems to be no argument that if Dunker did reveal any secrets to VAP, he did so in Oklahoma after he was hired in 1999.

When reduced to these few facts, it becomes apparent that the only direct connection between this litigation and the defendants' actions is that the injury caused by the alleged tort will be felt in North Dakota (whether this is sufficient is addressed below). Notably, VAP did not reach into North Dakota to hire Dunker; he was living in Minnesota at the time he was hired. Thus, this is not a case in which the defendant "entered" North Dakota to entice the employee away; were this true, the case for jurisdiction might well be stronger. See *Ciena Corp. v. Jarrard*, 203 F.3d 312, 318 (4th Cir.2000) (extending jurisdiction over a former employee in a trade secrets case in part because the employee's "abrupt departure from the company to work for a competitor" implicated training and experience she acquired in the forum state). The fact that Dunker had voluntarily left North Dakota and spent two years in Minnesota undercuts the assertion that extending jurisdiction over him and VAP is reasonable. *Id.*

Further, the tort was allegedly committed in Oklahoma, not North Dakota. Until Dunker revealed the information and VAP used it—which allegedly happened in Oklahoma in 1999 or 2000—no tort had been committed. Thus, all the "action" took place outside of North Dakota, further undercutting jurisdiction in North Dakota. The Court recognizes that Dunker obtained the information in North Dakota, but VAP had nothing to do with this. Further, he obtained the information legitimately before severing his ties with the state, rendering the contacts, if not random, then at least fortuitous and attenuated, making predicating jurisdiction on them inappropriate. See *id.*

In short, then, the Court is left with no real connection to North Dakota except the effects of an intentional tort. Surely, the brunt of any injury will be felt in North Dakota. Recognizing this, plaintiff focuses in large part on the *Calder* "effects test." See *Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384, 1390–91 (8th Cir.1991) (citing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). As the Eighth Circuit has explained, the effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus.*, 946 F.2d at 1391. According to plaintiff, defendants committed intentional torts— revealing and procuring a trade secret— while knowing that the primary consequence would be felt in North Dakota, and breached or interfered with a contract. Thus, they argue this standard justifies asserting jurisdiction.

Subsequent Eighth Circuit decisions have clarified the effects test, however, and the Court concludes they have somewhat limited its application. In *Hicklin Engineering, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992), the court noted that *Calder* did not depend entirely on

"mere effects." Rather, the defendant had intentionally targeted the forum state and had a significant percentage of its business there. *Id.* This suggests that there must be some connection independent of the effects of the tort to justify jurisdiction. *Id.* (noting additional factors beyond "mere effects" in *Calder*). In the Court's view, this conclusion is buttressed by Dakota Industries, on which plaintiff relies; the court there noted that defendants sold their products in South Dakota, where plaintiff sought to assert jurisdiction, leading to the conclusion that the defendant's actions "were uniquely aimed at the forum state." 946 F.2d at 1391.

Another Eighth Circuit district court's struggle with these very issues is also illuminating. In *EFCO Corp. v. Aluma Systems, U.S.A.*, 983 F.Supp. 816 (S.D.Iowa 1997), also a trade secrets case, the Southern District of Iowa found the effects test justified asserting Iowa jurisdiction over non-Iowa corporations. The court's opinion provides an extensive review of the effects test as applied in the Eighth Circuit, including reviews of *Dakota Industries* and *Hicklin Engineering*. *Id.* at 821–23. After determining that the "primary lesson" of these cases is that "each case must be decided on its own unique factual background," the court concluded that the case before it was more like *Dakota Industries* than like *Hicklin Engineering*, thus justifying jurisdiction. *Id.*

Notably, however, while the court declined to read *Hicklin Engineering* to require something beyond a tort to justify jurisdiction, it stressed that there was something more in the case before it: Plaintiff and defendant were "two of three major competitors in the same market" and had been "engaged in direct competition for several years." *Id.* Further, there was proof that the defendant had used the trade secrets it obtained to compete directly with the plaintiff. *Id.* Thus, the court actually did find more contacts than the "mere effects" against which *Hicklin* cautions basing jurisdiction. *Hicklin*, 959 F.2d at 739.

The Court has already indicated its view that Hicklin does suggest something more than "mere effects" is required. *Id.* Here, there is no connection between defendants and North Dakota beyond the alleged tort, and this is insufficient even under the effects test. *Id.* To hold otherwise would be to base jurisdiction on "mere effects," precisely what *Hicklin* suggests is incorrect. *Id.*

In short, the Court has been unable to locate a case in which the sole connection between the defendant and the forum is the effects of an intentional tort. All the cases the Court has considered and discussed above contain some additional element of some kind justifying application of the effects-test method of establishing jurisdiction. Such an additional element is lacking here. Thus, the Court concludes the third factor to be considered—the relation of the cause of action to the contacts—does not support jurisdiction. *Guinness Import*, 153 F.3d at 614.

█ The Court's analysis so far has, to some extent at least, treated the two defendants similarly. That is, the Court has focused on the facts and theories which would justify asserting jurisdiction over both Dunker and VAP, rather than analyzing them individually. The Court is aware, of course, that plaintiff has made multiple claims: It has sued Dunker for breach of contract and for misappropriation of trade secrets and has sued VAP for interference with contract and misappropriation of trade secrets. The Court is also aware that, theoretically, the personal jurisdiction analysis should be performed with regard to each defendant. See, e.g.,

*Calder*, 465 U.S. at 790, 104 S.Ct. 1482 ("Each defendant's contacts with the forum state must be assessed individually.").

However, the Court believes it appropriate, based on the unique facts of this case, to emphasize the analysis applicable to both defendants. Plaintiff could have chosen to proceed against Dunker alone; had it done so, the analysis might be different, and it is possible jurisdiction might more easily attach. However, litigating the issue with respect to Dunker only would be an inefficient, piecemeal means of adjudication.

Essentially, this is a case that should be tried—or disposed of—as one piece. The parties' actions seem to recognize this: Plaintiff chose to sue both defendants together, and defendants have thus far presented a unified defense. The Court tends to agree with this view. Without explicitly ruling on the issue, the Court believes it likely that, if it chose to exercise jurisdiction over Dunker alone, the case may require dismissal or transfer under Rule 19, on the grounds that VAP is a necessary and indispensable party. In short, then, the Court chooses to emphasize the analysis applicable to both parties in order to rule on the case as a whole, as seems necessary based on its unique facts and circumstances.

Consideration of the final two factors does not change the Court's conclusion. First, while North Dakota has an interest in providing a forum for its residents, it is crucial to note that the Court is not dismissing the case. *Id.* Rather, it is transferring it to Oklahoma, where Drayton will have a full opportunity to litigate it. The final factor—convenience of the parties—is essentially a wash: It is convenient for Drayton here, but it is convenient for VAP and Dunker in Oklahoma. Id. Therefore, the Court concludes it lacks personal jurisdiction over defendants. However, the motion to dismiss is **DENIED,** as the Court orders the case transferred as set forth below.

## B. Venue

■ The next issue raised by the parties is venue. Under 28 U.S.C. § 1391, venue is appropriate in federal diversity cases in any of three places:

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Clearly, plaintiff could have brought this action in the Western District of Oklahoma pursuant to subsection (1), but it chose not to do so. Thus, since Oklahoma was available, subsection (3) cannot apply. The remaining question, therefore, is whether North Dakota is a proper venue under subsection (2) as a district in which a "substantial part of the events or omissions giving rise to the claim occurred."

■ The Court's earlier holding that it lacks personal jurisdiction obviates the need to undertake this inquiry. Eighth Circuit precedent establishes that 28 U.S.C. § 1406(a), which allows a court to dismiss or transfer a case in which venue is laid in the "wrong division or district," applies whenever there is an impediment preventing the court from proceeding to trial on the merits. See, e.g., *Mayo Clinic v. Kaiser*, 383 F.2d 653, 655–56 (8th Cir. 1967); see also 15 Charles A. Wright, Arthur R. Miller and Edward H. Cooper,

Federal Practice and Procedure, § 3827 (discussing effect of lack of jurisdiction on § 1406). Lack of personal jurisdiction satisfies this standard. *Mayo Clinic*, 383 F.2d at 655–56.

■ Therefore, the Court is free to dismiss or transfer the case, according to § 1406, on the basis of its jurisdictional determination. The Court also notes briefly that transfer is permissible "whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Thus, the question is whether the Court should dismiss or transfer this action.

The Court concludes transfer is preferable to dismissal here. Without indicating any position on the merits of the parties' positions, the Court believes plaintiff has advanced a colorable claim. There are many unresolved issues presented in the limited record before the Court, which suggests a continued lawsuit is appropriate. Dismissal would simply require the case to begin again, requiring further service of process and further delaying the commencement of discovery. Therefore, the Court determines that the interests of justice require the Court to transfer the case to the Western District of Oklahoma, where there will be no questions of personal jurisdiction or venue.

## C. Arbitration clause

The parties also dispute the applicability and effect of an arbitration clause in the contracts at issue. The Court declines to address the issue. The Court believes the matter is better addressed by the Western District of Oklahoma, to which the Court has transferred the case and which will be handling it substantively from this point forward.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is **DENIED** (doc. # 21). However, the Court **ORDERS** that the case is **TRANSFERRED TO THE WESTERN DISTRICT OF OKLA-HOMA.** The Court **ORDERS AND DIRECTS** the Clerk to effectuate this transfer in its usual and customary manner.

**IT IS SO ORDERED.**