665 S.E.2d 660

**POWER PRODUCTS AND SERVICES COMPANY, INC., Appellant,**

v.

**Robert A. KOZMA, Longdrive Partners, Ltd., Cheryl C. Ferguson, James V. Hobbs, Lakeland Engineering Corporation, Timothy H. Montgomery, individually and d/b/a River Technologies, LLC, Respondents.**

No. 4417.

Court of Appeals of South Carolina.

Heard May 6, 2008.

Decided June 20, 2008.

Rehearing Denied Aug. 25, 2008.

424

426

---

Richard C. Detwiler and Ian D. McVey, both of Columbia, for Appellant.

David J. Mills, of Georgetown; and Robert L. Widener, of Columbia, for Respondents.

HUFF, J.:

Power Products and Services Company, Inc., (Power Prod-

ucts) appeals the trial court's grant of Respondents'[1] motion to dismiss for lack of personal jurisdiction. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Power Products is a Virginia corporation, formed in 1983, which moved its principal place of business to Georgetown, South Carolina in 1998. Power Products provides radiological control and decontamination equipment to the nuclear industry. The individual Respondents all had some form of working relationship with Power Products as employees and/or independent contractors, and had ceased their relationship with Power Products at the time this action was initiated. Subsequent to this termination of their working relationships, Kozma, Ferguson, Hobbs, and Montgomery formed an entity to distribute products in the nuclear power industry and in May 2004 submitted documents to the Virginia State Corporation Commission to form River Technologies, LLC. River Technologies resells products produced by a manufacturer named Norclean. These products are used for the removal of radiological and environmental waste. Power Products contends Kozma and Ferguson misappropriated trade secrets during their working relationship with Power Products and conspired with the other individual respondents to use the misappropriated trade secrets.

Power Products sued Respondents, alleging six causes of action: violation of the South Carolina Trade Secrets Act, breach of employee's duty of loyalty and fidelity, breach of employment agreement, breach of contract (specific to Hobbs), breach of the duty of good faith and fair dealing, and civil conspiracy. In its complaint, Power Products alleged: (1) Kozma resides in Georgetown County and was formerly employed by Power Products; (2) Longdrive exists under South Carolina laws, has a principal place of business in South Carolina, and is the alter-ego of Kozma; (3) Ferguson is a citizen of Virginia and committed the acts complained of while employed by Power Products in South Carolina; (4) Hobbs is

---

1. Robert A. Kozma (Kozma), Longdrive Partners, Ltd. (Longdrive), Cheryl C. Ferguson (Ferguson), James V. Hobbs (Hobbs), Lakeland Engineering Corporation (Lakeland), Timothy H. Montgomery (Montgomery), individually and d/b/a River Technologies, LLC (River Technologies), hereinafter Respondents, collectively.

a citizen of Maryland and was a former associate of Power Products, acting as an independent contractor; (5) Lakeland is a Maryland corporation and the alter-ego of Hobbs; (6) Montgomery is a Virginia citizen and was formerly employed by Power Products; (7) River technologies is a *de facto* partnership of one or more defendants; and (8) the complained of acts occurred in South Carolina. In particular, Power Products alleged that Kozma and Ferguson were terminated in or around July 2003 and, "on information and belief had already misappropriated all of the Trade Secrets of Power Products with a plan toward opening a competitive business."

Respondents moved to dismiss based on a lack of personal jurisdiction, asserting each were citizens or corporate citizens of a state other than South Carolina and there was an insufficient nexus from their actions to support jurisdiction in this state. Respondents submitted affidavits in support of their motion to dismiss. Ferguson's affidavit shows she is a citizen and resident of Virginia and was employed with Power Products from July 1992 through July 2003. She worked solely in Virginia from 1992 until 1999, at which time she began to commute to South Carolina to work during the week, but maintained her residency in Virginia, continued to perform some of her work duties from her home in Virginia, and filed for unemployment in Virginia following her termination from Power Products in July 2003. Kozma filed an affidavit averring that he is a citizen and resident of Virginia and has been since September 2003. From November 1993 to March 1994 and from November 2001 to September 2003, Kozma performed services for Power Products in his capacity as an employee of Longdrive, a New York corporation that served as a marketing and sales consultant for Power Products. Hobbs' affidavit indicates he is a citizen and resident of Maryland and has never been a resident of South Carolina. He was associated with Power Products as an independent contractor through Lakeland, a Maryland corporation that performed certain engineering services for Power Products. Lakeland last performed services for Power Products in May 2003. Finally, Montgomery's affidavit indicates he is a citizen and resident of Virginia, never having resided in South Carolina. He was formerly employed by Power Products in a sales capacity from 1986 to 1994, during which time he was

always based in Virginia. South Carolina was never included in his sales territory. Power Products terminated his employment in 1994 after Montgomery suffered a back injury, and he has had no contact with Power Products since that time.

Power Products maintained jurisdiction was proper in South Carolina because (1) many of Respondents' tortious actions occurred while Respondents were in South Carolina and (2) the respondents have minimum contacts with South Carolina because they were current or former residents of this state, they committed numerous torts in this state, and they are using the misappropriated trade secrets to sell or attempt to sell their products in this state. Power Products submitted the affidavits of Al Burns and Jeffrey R. Rogers to support its contention Respondents were misappropriating Power Products' trade secrets and conducting business in South Carolina. Power Products further included within its filings a printout of River Technologies' website, to show River Technologies was currently doing business or attempting to do business in South Carolina. Lastly, Power Products submitted a decree of divorce showing Kozma had lived with his wife in South Carolina until their separation in July 2003.

The trial court granted Respondents' motion to dismiss for lack of personal jurisdiction. The court found "*all* Defendants are out-of-state residents and have so resided at all times pertinent to this litigation" and the "entities named as Defendants are likewise corporate citizens of other states." Further, the court found Power Products is a corporation organized and registered in Virginia. Additionally, the trial court stated:

> [Power Products] argues that if [Respondents] are competing in the nuclear industry, they must be doing so using trade secrets taken from [Power Products]. However, this Court finds such conclusory statements an insufficient basis for the assertion of *in personam* jurisdiction. The record establishes that fewer than seventy-two (72) nuclear power facilities exist in the United States, and the existence of these facilities (and their purchasing departments) are in no way "secret" or "confidential." The record further reflects that there are presently four or five businesses which compete with [Power Products] in the nuclear market. The Court thus rejects [Power Products'] argument that all

nuclear industry sites are "its customers" and any contact with them constitutes evidence that these [Respondents] misappropriated trade secrets. Moreover, [Power Products] did not submit any evidence that the "off the shelf" products re-sold by the [Respondents] were products developed pursuant to anything "taken" from [Power Products].

The trial court held Power Products' "conclusory allegations fail to establish the contacts necessary to invoke personal jurisdiction over these [Respondents] either generally or specifically." After analyzing the matter under South Carolina's Long–Arm Statute and under due process requirements, the court concluded Power Products failed to establish the necessary requisites to confer jurisdiction pursuant to both this state's Long–Arm Statute and the minimum contacts required to afford due process. This appeal follows.

## STANDARD OF REVIEW

Personal jurisdiction over a nonresident defendant is a question to be resolved upon the facts of each particular case. *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005). "The decision of the trial court should be affirmed unless unsupported by the evidence or influenced by error of law." *Id.* The party seeking to invoke personal jurisdiction over a non-resident defendant by using South Carolina's long-arm statute bears the burden of establishing jurisdiction. *S. Plastics Co. v. S. Commerce Bank*, 310 S.C. 256, 259, 423 S.E.2d 128, 130 (1992). "At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction either in the complaint or in affidavits." *Moosally v. W.W. Norton & Co.*, 358 S.C. 320, 328, 594 S.E.2d 878, 882 (Ct.App. 2004). When a nonresident defendant attacks the allegations of a complaint based on jurisdiction, the court is not confined to the allegations of the complaint but may resort to affidavits or other evidence to determine jurisdiction. *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007).

## LAW/ANALYSIS

Power Products maintains the trial court erred in finding it lacked personal jurisdiction over the Respondents. We disagree.

■ Traditionally, our courts have employed a two-step analysis in determining whether it is proper to exercise personal jurisdiction over a nonresident defendant. *S. Plastics Co. v. S. Commerce Bank*, 310 S.C. 256, 423 S.E.2d 128 (1992). First, the trial court must determine that the South Carolina long-arm statute applies. Second, the trial court must determine that the nonresident's contacts in South Carolina are sufficient to satisfy due process requirements. *Id.* However, both this court and our Supreme Court have noted our long-arm statute, which affords broad power to exercise personal jurisdiction over causes of action arising from tortious injuries in South Carolina, has been construed to extend to the outer limits of the due process clause. *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005); *Moosally v. W.W. Norton & Co.*, 358 S.C. 320, 329, 594 S.E.2d 878, 883 (Ct.App.2004). Accordingly, our courts have held, because we treat our long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction in this case would violate the strictures of due process. *Id.* *See also Sonoco Prods. Co. v. Inteplast Corp.*, 867 F.Supp. 352, 354 (D.S.C.1994) (holding our long-arm statute has been interpreted to reach the limits of due process and therefore the determination of personal jurisdiction in South Carolina compresses into a due process assessment of minimum contacts and fair play). Whether employing the traditional two-step analysis, or following the more recent determination that the analysis is compressed into a due process assessment alone, it is clear that personal jurisdiction over a non-resident defendant may be invoked only if the nonresident's contacts in South Carolina are sufficient to satisfy due process requirements. Because we agree with the trial court that Power Products failed to meet its burden of proving personal jurisdiction under the strictures of due process, we affirm.

■ Due process requires that there exist minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Cockrell*, 363 S.C. at 491, 611 S.E.2d at 508. Further, the due process requirement mandates the defendant possess sufficient minimum contacts with

the forum state such that he could reasonably anticipate being haled into court there. *Id.* at 491–92, 611 S.E.2d at 508.

In determining whether due process minimum contacts exist between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice, a two pronged analysis is applied. *S. Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131. The court must (1) find that the defendant has the requisite minimum contacts with the forum, without which, the court does not have the "power" to adjudicate the action and (2) find the exercise of jurisdiction is reasonable or fair. *Id.* "If either prong fails, the exercise of personal jurisdiction over the defendant fails to comport with the requirements of due process." *Id.*

> Under the power prong, a minimum contacts analysis requires a court to find that the defendant directed its activities to residents of South Carolina and that the cause of action arises out of or relates to those activities. Without minimum contacts, the court does not have the "power" to adjudicate the action. It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Whether the constitutional requirement of minimum contacts has been met depends on the facts of each case.

*Moosally,* 358 S.C. at 331–332, 594 S.E.2d at 884–885 (internal citations omitted).

In order to determine whether the exercise of jurisdiction over a foreign defendant meets the fairness prong, the court must consider the following: (1) the duration of the activity of the nonresident within the state; (2) the character and circumstances of the commission of the nonresident's acts; (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident; and (4) the State's interest in exercising jurisdiction. *Cockrell,* 363 S.C. at 492, 611 S.E.2d at 508. A single act that causes harm in this State may create sufficient minimum contacts to confer

jurisdiction where the harm arises out of or relates to that act. *S. Plastics Co.,* 310 S.C. at 260–61, 423 S.E.2d at 131. However, that single act must create a "substantial connection" with the forum to give rise to jurisdiction. *Moosally,* 358 S.C. at 331, 594 S.E.2d at 884.

## A. Power Prong

 Power Products asserts it showed the requisite minimum contacts under the power prong. It contends the majority of Respondents' tortious acts occurred in South Carolina and the alleged duration and frequency of the acts were sufficient to satisfy due process. Power Products further maintains it presented evidence Respondents were doing business in South Carolina. We disagree.

As to the assertion the tortious acts occurred in South Carolina, the trial court found Power Products failed to allege specific facts to support its conclusory allegation that Respondents took the trade secrets in South Carolina, and further found the Respondents' affidavits actually support the opposite conclusion. In particular, the court noted Ferguson's affidavit shows she was unexpectedly terminated on a Sunday and was not allowed to return to Power Products' facility. Because she did not anticipate being fired, she had no opportunity to take anything from the company. While Power Products contends that Kozma and Ferguson had already misappropriated the trade secrets of Power Products with a plan toward opening a competitive business prior to their termination, we find absolutely no support for this conclusory assertion. Further, as did the trial court, we find the case of *Drayton Enters., L.L.C. v. Dunker,* 142 F.Supp.2d 1177 (D.N.D.2001) particularly instructive and applicable.

In *Drayton,* the United States District Court for the District of North Dakota analyzed a similar personal jurisdiction issue. There, defendants were Value–Added Products (VAP), an Oklahoma cooperative based in Oklahoma, and VAP's employee, Dunker, who was a former employee of Drayton. *Id.* at 1180. Drayton, a North Dakota based company, initiated litigation alleging Dunker had disclosed trade secrets to VAP and VAP had wrongfully obtained the trade secrets. *Id.* Drayton alleged that Dunker revealed its trade secrets to

VAP and VAP hired him with the secrets in mind. The court found there seemed to be no argument that if Dunker did reveal any secrets to VAP, he did so in Oklahoma after he was hired by VAP. *Id.* at 1184. Thus, the only direct connection between the litigation and the defendants' actions was the injury caused by the alleged tort to be felt in North Dakota. *Id.* The court held the tort was allegedly committed in Oklahoma, not North Dakota, because until Dunker revealed the information and VAP used it, no tort had been committed. *Id.* In the case at hand, Respondents' affidavits establish that the concept to form a business entity to do business in the nuclear field did not occur until well after all of the Respondents had severed their working relationships with Power Products and the individual defendants all resided in states other than South Carolina. While Kozma and/or Ferguson may have received such information during their work for Power Products in South Carolina, they could only have misappropriated it for use in the new company after their working relationships with Power Products were terminated and their connections to South Carolina severed. There is no specific allegation or showing that Ferguson and/or Kozma revealed, and River Technologies used, the allegedly misappropriated trade secrets prior to their termination of employment with Power Products.

Power Products relies on the printout of River Technologies' website, to show River Technologies was currently doing business or attempting to do business in South Carolina. In particular, it points to language on the website which states, "Our relationships extend to every commercial nuclear plant in the United States and Canada, a majority of U.S. Government DOE and DOD sites, and several large industrial manufacturers...." However, as noted by the trial court, Power Products failed to make any allegations or produce any evidence a South Carolina resident purchased any product from or because of River Technologies' website, or that the website was particularly directed at South Carolinians. *See Brown v. Geha–Werke GmbH,* 69 F.Supp.2d 770, 777–78 (D.S.C.1999) (holding the critical inquiry in such a matter is the nature and quality of commercial activity conducted by an entity over the Internet in the forum state, and where the record failed to reflect any commercial activity over the Internet in South

Carolina and plaintiff failed to submit evidence any South Carolina resident, other than the staff of plaintiff's attorney's law firm, visited the entity's website or purchased any product over or because of the website, or that the website was directed at South Carolina any more than any other place, the entity's website did not provide the basis for an assertion of personal jurisdiction).

Power Products also relies on the affidavit of Al Burns, the former director of the Planning Commission for Economic Development in Georgetown County. In his affidavit, Mr. Burns states that Kozma informed him in August 2004 he had opened a new company in Virginia that would be in the same business as Power Products "and that he *might* be looking at moving the company down to Georgetown." (emphasis added). Mr. Burns further stated Kozma informed him he was interested in playing in an annual golf tournament "as a prospective new industrial client representing his new Virginia business." At most, this affidavit merely suggests Respondents considered doing business in South Carolina, not that they actually did business in South Carolina. Accordingly, Power Products failed to meet its burden of establishing Respondents directed activities to residents of South Carolina and that the cause of action arises out of or relates to those activities, and therefore failed to meet the requirements of the "power prong."

## B. Fairness Prong

Power Products contends the court may properly exercise jurisdiction under the fairness prong. It argues it has its principal place of business in South Carolina and that much of the evidence and many of the witnesses are located in South Carolina. Power Products further maintains Respondents are all either former residents of the state or have lived and/or worked in this state for extended periods of time.

As noted by the trial court, River Technologies' principal place of business is in Virginia. It does not have offices or employees in South Carolina, and there is no evidence it has any customers in this state. None of the Respondent entities are corporations of this state and none of the individual Respondents are residents or citizens of South Carolina.

While Ferguson worked for Power Products in South Carolina for approximately four years out of her eleven year employment with Power Products, she continued to maintain her residency in Virginia the entire time. Both Hobbs' and Montgomery's affidavits show they have never been residents of South Carolina. Montgomery lives in Virginia and Hobbs lives in Maryland. Only Kozma resided in South Carolina, and his affidavit shows he became a citizen of Virginia in early September 2003. We agree with the trial court that the Respondents' limited working relationship with Power Products is not a sufficient nexus to satisfy due process. We also agree with the trial court that the mere fact that the alleged injury may be felt in South Carolina is insufficient to support jurisdiction under the facts of this case. As noted, the alleged tortious conduct of the Respondents could not have occurred until after Ferguson and Kozma's relationships were severed with Power Products and they revealed, and River Technologies used, the allegedly misappropriated trade secrets. At this time, their connections to South Carolina had been severed. Further, it is uncontested that Power Products, despite the fact that it maintains its principal place of business in South Carolina, is still a Virginia corporation, organized and existing pursuant to Virginia law. Accordingly, under the facts of this case, we do not believe this state's exercise of jurisdiction over the Respondents would be reasonable or fair.

## CONCLUSION

We hold Power Products failed to establish sufficient minimum contacts of any of the Respondents' to indicate purposeful availment of the privilege of conducting activities within this state such that they should be haled into court in this state. Nor did Power Products meet its burden of showing Respondents' had such minimum contacts that exercise of jurisdiction is reasonable or fair. Consequently, the evidence supports the trial court's findings that Power Products did not establish facts sufficient to confer jurisdiction over Respondents. For the foregoing reasons, we find the trial court did not err by dismissing Power Products' action for lack of personal jurisdiction. Accordingly, the trial court is

**AFFIRMED.**

ANDERSON and KITTREDGE, JJ., concur.