611 S.E.2d 505

Norman Jeffrey COCKRELL, as Guardian ad litem for Ryan Jeffrey Cockrell, Appellant,

v.

HILLERICH & BRADSBY COMPANY d/b/a Louisville Slugger, James A. Sherwood, University of Massachusetts at Lowell Baseball Research Center, the National Federation of State High School Associations, and the South Carolina High School League, Defendants,

of whom James A. Sherwood and University of Massachusetts at Lowell Baseball Research Center are Respondents.

No. 25964.

Supreme Court of South Carolina.

Heard Feb. 15, 2005.

Decided April 4, 2005.

Charles W. Whetstone, Jr., of James C. Anders, P.A., of Columbia; J. Kendall Few, of J. Kendall Few, P.A., of Greer; and Stephen D. Baggett and Kenneth W. Poston, both of McDonald, Patrick, Tinsley, Baggett & Poston, of Greenwood, for Appellant.

C. Mitchell Brown, of Columbia, and Elizabeth M. McMillan, of Greenville, both of Nelson, Mullins, Riley & Scarborough, L.L.P., for Respondents.

Justice WALLER.

This is a products liability and negligence case in which the circuit court granted the respondents' motion to dismiss for lack of personal jurisdiction. We affirm.

## FACTS

On March 16, 2002, Ryan Cockrell, a thirteen-year old seventh grader, was pitching in a Greenwood High School junior varsity baseball game. A line drive ball off the bat of an opposing player hit Ryan in the head causing severe injuries. The bat was an aluminum bat manufactured by defendant Hillerich & Bradsby Company d/b/a Louisville Slugger (Hillerich). The respondents, the University of Massachusetts at Lowell Baseball Research Center (Research Center) and James Sherwood (Sherwood), a mechanical engineering professor and the Director of the Research Center, certified the bat as meeting certain National Collegiate Athletic Association (NCAA) regulations.

The appellant, Ryan's father, brought this action alleging products liability, negligence, breach of warranties, and fraudulent concealment against Hillerich; negligence and negligent misrepresentation against the National Federation of High Schools; and negligence against the South Carolina High School League. The appellant also alleges negligence, recklessness, and fraudulent concealment against the respondents. The respondents filed a motion to dismiss for lack of personal jurisdiction. The circuit court granted the respondents' motion and the appellant appeals.

## ISSUE

Did the circuit court err in granting the respondents' motion to dismiss for lack of personal jurisdiction?

## DISCUSSION

### I. Background

Typically, aluminum bats substantially outperform traditional wooden bats and other metal bats. However, aluminum bats also increase the risk to pitchers and other infield players because the high speed of the balls batted off these bats decreases these players' reaction time. The NCAA developed a maximum-batted exit speed and certain weight and length requirements for aluminum bats and announced that the respondents would test and certify that all aluminum bat models meet these requirements.

After the respondents have certified a bat model, a permanent certification mark must be clearly displayed on the barrel end of each bat. Further, the NCAA rules specifically state: "The manufacturer may use the certification mark in descriptive materials (such as catalogs) to identify bats that comply with this testing standard, but may make no other use of the mark. Use of the certification mark to advertise or promote the sale or distribution of bats is expressly prohibited." We note the certification of a bat means simply it has passed the standards which the NCAA has set forth. It does not mean the bat has been otherwise tested for safety.

Apparently, some aluminum bats manufactured by Hillerich pass the NCAA certification tests in the lab but not in the field because in practice the bats swing faster. The respondent Sherwood recognized this as evidenced by his February 7, 2000 memo to the NCAA and his presentation to the annual meeting of the New England Intercollegiate Baseball Association on February 20, 2000. Sherwood sought reassurance that his certification of these bats would not render him liable and action from the NCAA to close the loopholes. This information was widely disseminated throughout numerous media reports and the NCAA later changed its rules in an attempt to close any loopholes.

### II. Personal Jurisdiction

■ The circuit court granted the respondents' motion to dismiss for lack of personal jurisdiction finding that the respondents did not have sufficient minimum contacts with South Carolina and it would be unfair and unreasonable to exercise personal jurisdiction over them. We agree.

Sherwood is a resident of Massachusetts and the Research Center is a corporation with its principal place of business in Massachusetts. In the amended complaint, the appellant alleges South Carolina courts have personal jurisdiction over the respondents solely because the respondents "have tested and certified baseball bats including the subject model, large numbers of which are sold, distributed and used in South Carolina."

The question of personal jurisdiction over a nonresident defendant is one which must be resolved upon the facts of each particular case. *Engineered Prods. v. Cleveland Crane & Eng'g,* 262 S.C. 1, 201 S.E.2d 921 (1974). The decision of the trial court should be affirmed unless unsupported by the evidence or influenced by an error of law. *Id.* at 4, 201 S.E.2d at 922. At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction either in the complaint or in affidavits. *Mid–State Distribs., Inc. v. Century Importers, Inc.,* 310 S.C. 330, 426 S.E.2d 777 (1993).

Specific jurisdiction over a cause of action arising from a defendant's contacts with the state is granted pursuant to the long arm statute. S.C.Code Ann. § 36–2–803 (2003). South Carolina's long-arm statute, which includes the power to exercise personal jurisdiction over causes of action arising from tortious injuries in South Carolina, has been construed to extend to the outer limits of the due process clause. *Meyer v. Paschal,* 330 S.C. 175, 498 S.E.2d 635 (1998). Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process. *Moosally v. W.W. Norton & Co., Inc.,* 358 S.C. 320, 329, 594 S.E.2d 878, 883 (Ct.App.2004) citing *Sonoco Prods. Co. v. Inteplast Corp.,* 867 F.Supp. 352, 354 (D.S.C.1994).

### Due Process/Sufficient Minimum Contacts

Due process requires that there exist minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Further, due process mandates that the defendant possess

sufficient minimum contacts with the forum state, so that he could reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Atlantic Soft Drink Co. v. South Carolina Nat'l Bank,* 287 S.C. 228, 336 S.E.2d 876 (1985). Without minimum contacts, the court does not have the "power" to adjudicate the action. *Southern Plastics Co. v. Southern Commerce Bank,* 310 S.C. 256, 260, 423 S.E.2d 128, 131(1992). The court must also find that the exercise of jurisdiction is "reasonable" or "fair." *Id.*

Under the fairness prong, the court must consider: (1) the duration of the activity of the nonresident within the state; (2) the character and circumstances of the commission of the nonresident's acts; (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident; and (4) the State's interest in exercising jurisdiction. *Clark v. Key,* 304 S.C. 497, 405 S.E.2d 599 (1991). *See also Southern Plastics Co.,* 310 S.C. at 260, 423 S.E.2d at 131.

The due process requirements must be met as to each defendant and thus the Court is to assess individually each defendant's contacts with South Carolina. *See Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). Further, the focus must center on the contacts generated by the defendant, and not on the unilateral actions of some other entity.... *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)(holding "unilateral activity of another party or a third person is not an appropriate consideration"). The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 559.

The appellant alleges the following facts support finding the respondents purposefully availed themselves of the laws of South Carolina. The Research Center was the exclusive testing and certification facility for all bats used in schools under the auspice of the NCAA and the National Federation of State High School Associations and there are 20 NCAA

schools and 194 high schools in South Carolina. Thus, the appellant concludes that the respondents have an effect on 6,000 students in South Carolina. Additionally, the appellant alleges that the sale of 14,000 bats in South Carolina annually generates sales of more than $2 million. The appellant then contends that of the $1 million paid to the respondents,[1] $14,000 would be attributable to sales of bats in South Carolina.

The Court of Appeals recently held that an individual does not "purposefully avail" himself of the laws of this State merely by virtue of having authored a single literary work on a topic of national interest. *Moosally v. W.W. Norton & Co., Inc.,* 358 S.C. 320, 594 S.E.2d 878 (Ct.App.2004).[2] In *Moosally,* the explosion of the battleship USS IOWA was the subject of two CBS *60 Minutes* programs and subsequently a book was written by one of the programs' producers. The plaintiffs brought a libel suit alleging the defendants incorrectly placed the blame for the explosion on them. The defendants were the Virginia producer of the television program who subsequently wrote the book, a Maryland interviewee, and a New York publishing company. *Id.*

The book had been distributed throughout the United States, including South Carolina. The trial court granted the defendants' motions to dismiss for lack of personal jurisdiction. On appeal, the Court of Appeals found that the court had personal jurisdiction over the book publisher because it conducted business in the state, selling books in approximately 315 bookstores in the state and probably selling at least one copy of each title in South Carolina, in addition to conducting other business activities that amounted to directing its activities at South Carolina residents. *Id.* at 335, 594 S.E.2d at 886.

The Court of Appeals also found that personal jurisdiction did not exist for the interviewee, as "merely providing infor-

---

1. In computing this figure, the appellant included $600,000 which the respondents received from the National Baseball League (NBL), the NCAA, and the National Federation in the form of grants. However, these grants were not only for testing bats—the NBL also commissioned the respondents to test baseballs which have nothing to do with this lawsuit.

2. We note that this case was decided after the circuit court ruled on the respondents' motion to dismiss.

mation to an author about an event that did not occur in South Carolina" was not sufficient to "purposefully avail" himself of South Carolina's laws or establish minimum contacts. *Id.* at 333, 594 S.E.2d at 885.

The Court of Appeals found that the court did not have personal jurisdiction over the author, because "merely ... having authored a single literary work on a topic of national interest" was not enough to meet the power prong of the due process analysis. *Id.* at 334, 594 S.E.2d at 885. The plaintiffs had alleged that the following activities by the producer/author satisfied the minimum contacts requirement: (1) he was a producer on the television show *60 Minutes*, which airs in South Carolina; (2) he attended a funeral in South Carolina in 1972 as a reporter for CBS; (3) copies of his book were sold in South Carolina; (4) a movie version of his book was aired in South Carolina on the FX network; and (5) he made at least one business call to South Carolina for information on the battleship IOWA. *Id.* at 333, 594 S.E.2d at 885. The Court of Appeals held "[t]he fruits of [the producer/author's] labor—be it in literary or in cinematic form—arrived in South Carolina not through [his] efforts, but through the efforts of others, and therefore cannot serve as the basis for jurisdiction." *Id.* at 334, 594 S.E.2d at 885.

The Court of Appeals concluded that South Carolina does not have specific personal jurisdiction over a defendant who is the producer of a nationwide television program and the author of a book distributed nationwide who would directly profit from the sale of his books. Likewise, we conclude that South Carolina also does not have personal jurisdiction over the respondents in this case. The bats did not arrive in South Carolina through the respondents' efforts. As the NCAA regulations state, "[u]se of the certification mark to advertise or promote the sale or distribution of bats is expressly prohibited." Hillerich unilaterally distributed and sold them in South Carolina. The respondents had no control over the distribution of the bats and did not profit from their sale. The respondents merely certified the bats as having met the NCAA rules, which is clearly less activity than producing a nationwide television program or authoring a book.

█ The circuit court also found there was no basis for exercising general jurisdiction over the respondents. We

agree. A court may assert general jurisdiction if the defendant has an "enduring relationship" with the forum state. *See* S.C.Code Ann. § 36–2–802 (2003). General jurisdiction attaches even when the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts are both "continuous and systematic." *Helicopteros Nacionales,* 466 U.S. at 413–14 nn. 8–9, 104 S.Ct. 1868. These contacts must be "so substantial and of such a nature as to justify suit against [the respondents] on causes of action arising from dealings entirely different from those activities." *International Shoe Co. v. Washington,* 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Furthermore, the defendant's contacts with the forum must satisfy the due process clause. *Federal Ins. Co. v. Lake Shore Inc.,* 886 F.2d 654, 660 (4th Cir.1989). The respondents have not directed their activities at South Carolina and, as discussed above, their contacts with South Carolina cannot fairly be described as continuous and systematic so as to satisfy due process. *See Helicopteros Nacionales,* 466 U.S. at 416, 104 S.Ct. 1868.

In conclusion, we hold the respondents do not have the minimum contacts with South Carolina necessary to comply with the due process requirements. Accordingly, the trial court correctly granted the respondents' motion to dismiss due to lack of personal jurisdiction.

**AFFIRMED.**

TOAL, C.J., MOORE and BURNETT, JJ., concur. PLEICONES, J., concurring in result only.