666 S.E.2d 218

**STATE of South Carolina, Respondent,**

v.

**NV SUMATRA TOBACCO TRADING, CO., Appellant.**

**No. 26522.**

Supreme Court of South Carolina.

Heard May 28, 2008.

Decided July 21, 2008.

Rehearing Denied Sept. 25, 2008.

82

Joel W. Collins, Jr., Gray T. Culbreath, and Christian Stegmaier, of Columbia; Christopher L. Rissetto and Jason P. Matechak, of Washington, D.C., for appellant.

Attorney General Henry Dargan McMaster and Assistant Deputy Attorney General J. Emory Smith, Jr., of Columbia, for respondent.

Acting Chief Justice MOORE.

Respondent (the State) filed a complaint alleging that appellant, NV Sumatra Tobacco Trading Co. (Sumatra), is a tobacco product manufacturer under the Tobacco Escrow Fund Act, S.C.Code Ann. § 11–47–10, *et seq.* (Supp.2007). The State alleged Sumatra had failed to make the escrow deposit and provide the certification required by the Act for cigarettes that had been sold in South Carolina.

Sumatra filed an answer and moved to dismiss the action for lack of personal jurisdiction. In a 2003 order, the court ruled it had personal jurisdiction. The parties then filed cross-motions for summary judgment. In a 2006 order, the court granted the State's motion and denied Sumatra's motion. The court found that Sumatra had failed to comply with the Escrow Fund Act and assessed a civil penalty of $307,630.08. The court also prohibited Sumatra from selling cigarettes to South Carolina consumers for a period of two years. Finally, the court ordered Sumatra to pay attorney fees of $7,875.00 and filing fees of $95.00. Sumatra appeals both the 2003 and 2006 orders.

## FACTS

Under the Master Settlement Agreement, a group of United States-based tobacco product manufacturers agreed to pay money damages to the participating states, including South Carolina, for Medicare and Medicaid costs incurred by the states in paying health care expenses of in-state cigarette smokers and for education and cessation programs.

The South Carolina Tobacco Escrow Fund Act requires a tobacco product manufacturer having sales of cigarettes in this state (whether directly or through a distributor, retailer, or similar intermediary) to:

> (a) become a participating manufacturer, (as that term is defined in section II(jj) of the Master Settlement Agreement) [1] and generally perform its financial obligations under the Master Settlement Agreement; or
>
> (b)(1) place into a qualified escrow fund [2] by April 15 of the year following the year in question the following amounts (as such amounts are adjusted for inflation)—... for ... 2001 ...: $0.136125 per unit sold ...

S.C.Code Ann. § 11–47–30 (Supp.2007). The Act defines "tobacco product manufacturer" to include an entity that

> (1) manufactures cigarettes anywhere that such manufacturer intends to be sold in the United States, including cigarettes intended to be sold in the United States through an importer ... [or]
>
> (2) is the first purchaser anywhere for resale in the United States of cigarettes manufactured anywhere that the manufacturer does not intend to be sold in the United States; ...

§ 11–47–20(i).

Sumatra is a corporation organized under the laws of the Republic of Indonesia and its business address is located in Indonesia. Sumatra produces a number of tobacco products, including United brand cigarettes, the cigarettes at issue here. Sumatra also sells its products on the Indonesian retail market. Sumatra alleges it sells tobacco products destined for non-Indonesian markets solely to UNICO Trading Pte., Ltd.

---

1. *See* § 11–47–20(e) (Supp.2007).

2. *See* § 11–47–20(f) (Supp.2007).

(UNICO), a Singapore corporation. Sumatra alleges UNICO is not an agent of Sumatra or a distributor of Sumatra's products, but that UNICO acts entirely as an independent reseller. Sumatra states that it and UNICO are separate legal entities with no overlapping ownership or control and that UNICO has no authority to bind or otherwise act on Sumatra's behalf.

Sumatra admits that UNICO may have sold cigarettes produced by Sumatra to Silmar Trading Ltd., a British Virgin Islands corporation. Sumatra states it does not have any contractual relationship with Silmar Trading to sell its cigarettes in South Carolina. Sumatra states that Silmar Trading may have engaged American Automotive Security Products, d/b/a F.T.S. Distributors (FTS), a United States importer based in Miami, Florida, for the purpose of selling tobacco products produced by Sumatra in the United States.

## ISSUES

I. Did the circuit court err by denying Sumatra's motion to dismiss the complaint for lack of personal jurisdiction?

II. Did the circuit court err by granting summary judgment to the State?

## DISCUSSION

### I. Personal jurisdiction

Sumatra argues that, when determining whether personal jurisdiction exists, the court erred by relying on an affidavit of Basil E. Battah, the president of FTS. Sumatra claims the affidavit is not authenticated; however, this argument is not preserved for review. At the 2003 hearing, Sumatra objected to the introduction of the affidavit on the grounds of irrelevance and hearsay. Sumatra merely mentioned the affidavit was not authenticated. Sumatra did not raise this issue in any of its submissions to the lower court including the motion for reconsideration of the personal jurisdiction order. In fact, Sumatra previously used the Battah affidavit in making its argument on the merits that Sumatra was not shipping to a United States distributor. Therefore, Sumatra's arguments regarding the authentication of the Bat-

tah affidavit and its arguments regarding the alleged facial defects of the document are not preserved for the Court's review. *See Holy Loch Distribs., Inc. v. Hitchcock*, 340 S.C. 20, 531 S.E.2d 282 (2000) (to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court). Given the authentication argument is not preserved, the fact the Battah affidavit is a duplicate rather than the original is of no moment.[3] *See* Rule 1003, SCRE (a duplicate is admissible to same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original).

Sumatra argues the court erred by denying Sumatra's motion to dismiss for lack of personal jurisdiction. The court found that the connections of Sumatra's cigarettes, known as the United brand, to the United States are numerous. The court cited to Sumatra's admission that it manufactured the United brand and owned the United States trademark for it in 2001. The court noted the bill of lading attached to the Battah affidavit which showed a shipment of over 91,000 pounds of Sumatra cigarettes to the United States to FTS in December 2000. The court noted the Department of Revenue reports that 6,868,000 United brand cigarettes were sold in 2001, including those shipped by FTS. The court further noted that Sumatra had filed an ingredient report with the Center for Disease Control.

The 2003 court found the allegations in the complaint that Sumatra intended to sell cigarettes in the United States are amply sufficient to make the prima facie showing for jurisdiction due to the large volume of Sumatra's sales in South Carolina. The court pointed out that Sumatra acknowledged that its ownership of the trademark for United brand cigarettes could be construed as an indication that Sumatra itself has the intent to sell this brand in the United States.

---

3. Sumatra further argues the Battah affidavit is inadmissible hearsay. However, Sumatra does not point to any particular statement within the affidavit that would not be admissible in evidence; therefore, this argument is deemed abandoned. *See Colleton County Taxpayers Ass'n v. School Dist. of Colleton County*, 371 S.C. 224, 638 S.E.2d 685 (2006) (issue is deemed abandoned if the argument in the brief is conclusory).

The 2003 court found that personal jurisdiction was properly asserted over Sumatra because the requirements of due process are met, *i.e.* there are sufficient minimum contacts by Sumatra with South Carolina such that the court has the power to adjudicate the action and the exercise of jurisdiction is fair. The court stated that Sumatra's conduct has demonstrated its intent to avail itself of the vast, lucrative markets of each state in the United States.

■■ The question of personal jurisdiction over a nonresident defendant is one which must be resolved upon the facts of each particular case. *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 611 S.E.2d 505 (2005). The decision of the trial court will be affirmed unless unsupported by the evidence or influenced by an error of law. *Id.*

Initially, the court properly found that the allegations in the complaint that Sumatra intended to sell its United brand cigarettes in South Carolina were sufficient to make the prima facie showing for personal jurisdiction. *See Cockrell, supra* (at the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction in the complaint or in the affidavit); *Mid–State Distribs., Inc. v. Century Importers, Inc.*, 310 S.C. 330, 426 S.E.2d 777 (1993) (there is no "other evidence" requirement for personal jurisdiction where the complaint itself demonstrates jurisdiction). While the 2003 court could have stopped its analysis there, it chose to proceed with the more in-depth determination of personal jurisdiction. The 2006 court found that Sumatra had not offered any reason for a different conclusion regarding personal jurisdiction on summary judgment.

■ Specific jurisdiction over a cause of action arising from a defendant's contacts with the state is granted pursuant to the long-arm statute. *Cockrell, supra* (citing S.C.Code Ann. § 36–2–803). In the instant case, S.C.Code Ann. § 36–2–803(1)(h) (2003)[4] applies to the facts of this case and states that a court may exercise personal jurisdiction over a person

---

4. S.C.Code Ann. § 36–2–803 has since been amended. The subsection has not been changed; however, the previous statute applies because the new statute is applicable only to causes of action arising after July 1, 2005.

who acts directly or by an agent as to a cause of action arising from the person's production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used and consumed. South Carolina's long-arm statute has been construed to extend to the outer limits of the due process clause. *Id.* Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process. *Id.*

▮▮▮ Due process requires that there exist minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Further, due process mandates that the defendant possess sufficient minimum contacts with the forum state, so that he could reasonably anticipate being haled into court there. *Id.* citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Without minimum contacts, the court does not have the "power" to adjudicate the action. *Id.* The court must also find that the exercise of jurisdiction is "reasonable" or "fair." *Id.* If either prong fails, the exercise of personal jurisdiction over the defendant fails to comport with the requirements of due process. *Southern Plastics Co. v. Southern Commerce Bank*, 310 S.C. 256, 423 S.E.2d 128 (1992).

▮▮▮ The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. This theory of personal jurisdiction is known as the "stream of commerce" theory.[5] *Southern Plastics Co., supra* (citing

---

5. Sumatra contends this Court should embrace the "stream of commerce plus" theory of personal jurisdiction. This theory arose in a plurality opinion by Justice Sandra Day O'Connor of the United States Supreme Court in *Asahi Metal Ind. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The "stream of commerce plus" theory states that the placement of a product into the stream of commerce, without more, is not an act of the

*World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559).

While it is true Sumatra is not registered to do business in South Carolina, has no office in South Carolina, and no person representing Sumatra has been in South Carolina, physical presence in the State is not required to establish personal jurisdiction. *See Southern Plastics Co., supra.* The dispositive issue is whether Sumatra possesses minimum contacts with South Carolina.

It is clear Sumatra has minimum contacts with the United States as a whole and, via the stream of commerce theory, the State has shown Sumatra has minimum contacts with South Carolina. The facts pointing to minimum contacts are as follows: (1) Sumatra admits it manufactured the United brand cigarettes; (2) Sumatra admits it owns the United States trademark for that brand; (3) the Department of Revenue states 6,868,000 United brand cigarettes were sold in South Carolina in 2001; (4) Sumatra, either on its own or by someone else on its behalf, filed an ingredient report for the United brand cigarettes with the Center for Disease Control; (5) Sumatra admits it packaged its cigarettes in packs and cartons which bear the United States-required health warnings; and (6) the United brand packaging identifies the cigarettes as an "American blend," has a Surgeon General's warning, and shows an eagle and striped packaging. Regardless of how the cigarettes arrived in South Carolina, minimum contacts are established by the above information. Sumatra's actions indicate that it purposely availed itself of conducting business in all 50 states, including South Carolina. It is troubling that Sumatra insists it could engage in the activities listed above but avoid paying into state escrow accounts and avoid suit in each and every state of the nation by asserting

---

defendant purposely directed toward the forum state. The theory maintains that additional conduct indicating an intent or purpose to serve the market in the forum state is also necessary. *Asahi*, 480 U.S. at 112, 107 S.Ct. 1026. Only three other justices signed onto this theory. Justice William Brennan and three other justices maintained that simply placing a product into the stream of commerce is consistent with the Due Process Clause and they would not require a showing of additional conduct to assert jurisdiction. *Id.* at 117, 107 S.Ct. 1026. We, therefore, decline to embrace the "stream of commerce plus" theory.

the lack of personal jurisdiction in each state. We find Sumatra should have reasonably anticipated that it would be haled into court in a state such as South Carolina.[6]

 While there are sufficient minimum contacts such that the court has the "power" to adjudicate the action, it must also be determined whether the exercise of jurisdiction is "reasonable" or "fair." *Cockrell, supra.* Under the fairness prong, the court must consider: (1) the duration of the activity of the nonresident within the state; (2) the character and circumstances of the commission of the nonresident's acts; (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident; and (4) the State's interest in exercising jurisdiction. *Id.*

The exercise of jurisdiction over Sumatra is reasonable and fair. While it may be inconvenient for Sumatra to travel to the United States to defend the action against it, the State's interest in exercising jurisdiction outweighs any such inconvenience. The State has a valid interest in protecting itself against any suits that arise from a person smoking the United brand of cigarettes. Given the volume of those cigarettes sold within South Carolina, it is reasonable for Sumatra to be haled into a South Carolina court.

The State has shown that the court has the power to adjudicate the action and that it is reasonable to exercise jurisdiction. Therefore, the exercise of jurisdiction over Sumatra does not offend due process. Accordingly, the lower court properly found it could exercise personal jurisdiction over Sumatra.

---

6. *See State v. Grand Tobacco,* 171 Ohio App.3d 551, 871 N.E.2d 1255 (2007), appeal not allowed, 114 Ohio St.3d 1426, 868 N.E.2d 680 (2007) (finding a foreign tobacco product manufacturer has sufficient minimum contacts with Ohio such that the state can exercise personal jurisdiction over the company; noting that over 25 million units of Grand Tobacco's products were sold in Ohio from 2000 to 2003; and that Grand Tobacco took steps within the United States to trademark its products, to comply with federal regulations for the sale of cigarettes by submitting ingredient lists to the Center for Disease Control, and to distribute its products; it had purposely availed itself of conducting business in all 50 states, including Ohio).

## II. Summary judgment

 Sumatra argues the court erred by granting summary judgment to the State and denying its cross-motion for summary judgment.

The lower court, in its 2006 order, found that Sumatra is a tobacco product manufacturer under the Escrow Fund Act. The court noted that Sumatra admitted it is a manufacturer and that it did not contest that its cigarettes were sold in South Carolina. The court stated that the only question was whether Sumatra intended that the cigarettes it manufactured be sold in the United States and that this question was answered by several undisputed facts: (1) Sumatra's acknowledgement that it manufactures the United brand; (2) Sumatra's acknowledgement that its United States trademark for the brand may indicate an intent to sell in the United States; (3) the Department of Revenue's reports that almost seven million United brand cigarettes were sold in South Carolina in 2001; (4) Sumatra's packaging for United brand identifies it as an "American blend;" and (5) the Center for Disease Control's ingredient reporting compliance list showing that an ingredient list was submitted for Sumatra. The court noted that these factors, even without the bill of lading attached to the Battah affidavit, are sufficient to conclude Sumatra is a "tobacco product manufacturer" within the meaning of § 11–47–20(i)(1).

We find the trial court properly granted the State's motion for summary judgment and ordered Sumatra to make payments pursuant to the Escrow Fund Act because the above undisputed facts cited by the trial court establish Sumatra's intent to sell its cigarettes in South Carolina as required by the Escrow Fund Act.[7] *See* Rule 56(c), SCRCP (summary

---

7. Sumatra argues the Escrow Fund Act violates the takings provision of the South Carolina Constitution and that the Act, as applied to Sumatra, violates antitrust laws. The trial court found that these arguments were not before the court because they were not raised in Sumatra's answer. The court also denied the motion to amend the answer because Sumatra filed the motion to amend after the motion for summary judgment was filed and over two years after Sumatra had filed its answer. Sumatra does not appeal the denial of the motion to amend. Accordingly, whether the motion to amend was properly denied is not preserved for the Court's review and thus the takings and price-fixing arguments are not before the Court. *See* Rule 208(b)(1)(D),

judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Accordingly, the decisions of the lower court are

**AFFIRMED.**

BEATTY, J., and Acting Justices J. MICHELLE CHILDS and JOHN W. KITTREDGE, concur.

Acting Justice JAMES W. JOHNSON, JR., not participating.

SCACR; *Jinks v. Richland County,* 355 S.C. 341, 585 S.E.2d 281 (2003) (issue not argued in the brief is deemed abandoned and precludes consideration on appeal).