676 S.E.2d 714

**Edward C. CRIBB, Appellant,**

v.

**Dean SPATHOLT and Clark Callahan, in their individual capacities, and Boundary House, Inc., Respondents.**

No. 4520.

Court of Appeals of South Carolina.

Heard Jan. 6, 2009.

Decided March 24, 2009.

Henrietta U. Golding and Amanda A. Bailey, both of Myrtle Beach, for Appellant.

Arthur E. Justice, Jr. and Reginald W. Belcher, of Florence, for Respondents.

LOCKEMY, J.

Edward C. Cribb appeals the circuit court's grant of Dean Spatholt, Clark Callahan, and Boundary House's Rule 12(b)(2), SCRCP, motion to dismiss for lack of personal jurisdiction. We reverse.

## FACTS/PROCEDURAL BACKGROUND

Spatholt and Callahan own and operate Boundary House (Boundary), a seafood restaurant. Boundary is a North Carolina company organized under North Carolina law with its principal place of business located at 1045 River Road, Calabash, North Carolina. Spatholt serves as Boundary's president and treasurer, while Callahan serves as vice-president and secretary. Both serve on Boundary's board of directors.

Prior to Boundary's opening, Spatholt and Callahan approached Edward and his son, Buddy Cribb, to assist with the business. According to Buddy's affidavit and complaint, Spatholt and Callahan first approached him in December of 2003, while he was working at the Carolina Roadhouse in Myrtle Beach, South Carolina. It appears Buddy merely spoke with Spatholt and Callahan about Boundary and did not enter into any type of contract with them in 2003. Later, Spatholt and Callahan approached Edward to assist with the planning and operation of Boundary. According to Edward, he met with Callahan at the Carolina Roadhouse in Myrtle Beach twice in January of 2004 to negotiate and discuss restaurant plans. Thereafter, Edward entered into a contract with Spatholt and Callahan to work as a consultant for Boundary. Under the terms of the contract, Spatholt and Callahan agreed to pay Edward $35,000 until Boundary opened and thereafter 5% of Boundary's gross pre-tax revenues. Additionally, Edward agreed to help recruit his son, Buddy, as Boundary's general manager.

In early 2004, Edward contacted Buddy from Myrtle Beach about the general manager position at Boundary. Around May 2005, Buddy met with Spatholt and Callahan and discussed the potential employment. Shortly thereafter, Spatholt and Callahan offered, and Buddy accepted, the general manager position.

On September 12, 2006, Edward Cribb sued Callahan and Spatholt in their individual capacities and Boundary. In his complaint, Edward maintained Spatholt unilaterally terminated him on August 14, 2006, and alleged the following causes of action: breach of contract, promissory estoppel, violation of the South Carolina Payment of Wages Act, and negligent misrepresentation. Buddy Cribb also filed suit. Collectively,

Boundary, Callahan, and Spatholt moved to dismiss both cases for lack of personal jurisdiction, pursuant to Rule 12(b)(2), SCRCP. In a preliminary order, the circuit court granted the motion to dismiss. In a final order, the circuit court dismissed the case with prejudice after finding South Carolina lacked specific and general jurisdiction over Boundary, as a business, and over Callahan and Spatholt, in their individual capacities.

As to general jurisdiction the circuit court held Boundary, Callahan, and Spatholt "maintained no continuous and systematic general business contacts with South Carolina that were so substantial and of such a nature to justify allowing [Edward] to proceed with these lawsuits in this [c]ourt." In regards to specific jurisdiction, the circuit court found Boundary, Callahan, and Spatholt "did not engage in any of the requisite conduct that the long arm statute references." Further, the circuit court found subjecting Boundary, Callahan, and Spatholt to litigation in South Carolina violated due process because 1) the litigation would be unfair and unreasonable to them; 2) South Carolina had no viable interest in adjudicating a dispute involving conduct of a restaurant operating solely in Brunswick County, North Carolina; and 3) Edward Cribb knew or reasonably should have known that Boundary operated exclusively in North Carolina; thus, requiring Edward to adjudicate the lawsuit there would not be unfair. Accordingly, the circuit court dismissed Edward Cribb's lawsuit with prejudice. This appeal follows.

## ISSUE

Did the circuit court err in dismissing Edward Cribb's case after finding it lacked personal jurisdiction over Boundary as a business entity and Callahan and Spatholt individually?

## STANDARD OF REVIEW

The question of personal jurisdiction over a nonresident defendant is one which must be resolved upon the facts of each particular case. *State v. NV Sumatra Tobacco Trading, Co.*, 379 S.C. 81, 88, 666 S.E.2d 218, 221 (2008). The circuit court's decision should be affirmed unless unsupported by the evidence or influenced by an error of law. *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505,

508 (2005). "At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction either in the complaint or in affidavits." *Id.* "When a nonresident defendant attacks the allegations of a complaint based on jurisdiction, the court is not confined to the allegations of the complaint but may resort to affidavits or other evidence to determine jurisdiction." *Power Prods. & Servs. Co. v. Kozma,* 379 S.C. 423, 430, 665 S.E.2d 660, 664 (Ct.App.2008).

## PERSONAL JURISDICTION LAW

"The concept of jurisdiction refers to the authority of a court over a particular person (personal jurisdiction) or the authority of a court to entertain a particular action (subject matter jurisdiction), but the concept does not refer to the validity of the claim on which an action against a person is based." *Boan v. Jacobs,* 296 S.C. 419, 421, 373 S.E.2d 697, 698 (Ct.App.1988). In the present case, we are concerned with personal, rather than subject matter jurisdiction. Personal jurisdiction is exercised as "general jurisdiction" or "specific jurisdiction." *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte,* 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007).

### I. General Jurisdiction

Section 36-2-802 of the South Carolina Code (2003) governs general jurisdiction and states: "A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in, this State as to any cause of action." A court may assert general jurisdiction if the defendant has an "enduring relationship" with the forum state. *Cockrell v. Hillerich & Bradsby Co.,* 363 S.C. 485, 495, 611 S.E.2d 505, 510 (2005). If an individual has an "enduring relationship" with the State, he may be sued here even if the cause of action did not arise in South Carolina. *See id.* ("General jurisdiction attaches even when the nonresident defendant's contacts with the forum state are not directly related to the cause of action...."). To satisfy the "enduring relationship" requirement of general jurisdiction, the defendant's contacts must be "continuous and systematic" as well as "so substantial and of such a nature as to justify suit against

the defendant on causes of action arising from dealings entirely different from those activities." *See id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *Coggeshall,* 376 S.C. at 17, 655 S.E.2d at 479 ("An enduring relationship is indicated by contacts that are substantial, continuous, and systematic."). Furthermore, the defendant's contacts with the forum must satisfy the due process clause. *Cockrell,* 363 S.C. at 495, 611 S.E.2d at 510.

## II., Specific Jurisdiction

Courts may also have specific jurisdiction over a cause of action arising from a defendant's contacts with the state pursuant to the long-arm statute. *State v. NV Sumatra Tobacco Trading, Co.,* 379 S.C. 81, 88, 666 S.E.2d 218, 222 (2008). Under the long arm statute, a court may exercise personal jurisdiction over an individual acting directly or through an agent for causes of action arising from the individual's:

(1) transacting any business in this State;

(2) contracting to supply services or things in the State;

(3) commission of a tortious act in whole or in part in this State;

(4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(5) having an interest in, using, or possessing real property in this State;

(6) contracting to insure any person, property, or risk located within this State at the time of contracting;

(7) entry into a contract to be performed in whole or in part by either party in this State; or

(8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C.Code Ann. § 36–2–803 (Supp.2008). Traditionally, our courts have conducted a two-step analysis to determine whether specific jurisdiction is proper by 1) determining if the long arm statute applies and 2) determining whether the nonresi-

dent's contacts in South Carolina are sufficient to satisfy due process requirements. *Power Prods. & Servs. Co. v. Kozma,* 379 S.C. 423, 431, 665 S.E.2d 660, 664 (Ct.App.2008). However, a more recent trend compresses the analysis into a due process assessment only. *Id.* at 431, 665 S.E.2d at 664–65; *see also Cockrell,* 363 S.C. at 491, 611 S.E.2d at 508 ("Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process.").

Due process requires a defendant possess minimum contacts with the forum state such that maintenance of suit does not offend traditional notions of fair play and substantial justice. *Coggeshall,* 376 S.C. at 16, 655 S.E.2d at 478. "Further, the due process requirement mandates the defendant possess sufficient minimum contacts with the forum state such that he could reasonably anticipate being haled into court there." *Power Prods.,* 379 S.C. at 431–32, 665 S.E.2d at 665.

Courts apply a two-pronged analysis when determining whether a defendant possesses minimum contacts with the forum state such that maintenance of suit does not offend traditional notions of fair play and substantial justice. *Id.* at 432, 665 S.E.2d at 665. "The court must (1) find that the defendant has the requisite minimum contacts with the forum, without which, the court does not have the 'power' to adjudicate the action and (2) find the exercise of jurisdiction is reasonable or fair." *Id.* To support a finding of due process, both prongs must be satisfied. *Id.*

To satisfy the power prong, the court must find the defendant directed his activities to residents of South Carolina and that the cause of action arises out of or relates to those activities. *Moosally v. W.W. Norton & Co., Inc.,* 358 S.C. 320, 331–32, 594 S.E.2d 878, 884 (Ct.App.2004). The *Moosally* court stated:

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Whether the constitu-

tional requirement of minimum contacts has been met depends on the facts of each case.

358 S.C. at 332, 594 S.E.2d at 884–85 (internal citations omitted). Finally, under the fairness prong, the court must consider the following factors: (1) the duration of the defendant's activity in this State; (2) the character and circumstances of its acts; (3) the inconvenience to the parties; and (4) the State's interest in exercising jurisdiction. *NV Sumatra Tobacco Trading, Co.*, 379 S.C. at 91, 666 S.E.2d at 223.

## ARGUMENTS AND ANALYSIS

### I. Personal Jurisdiction of Edward Cribb's Claims Against Boundary, and Callahan and Spatholt individually

Edward Cribb argues the circuit court erred in dismissing his suit for lack of personal jurisdiction over Boundary as a business entity, and Callahan and Spatholt individually. He maintains the long arm statute applies to Boundary, Callahan, and Spatholt based on the following activities: (1) transacting any business in this State; (2) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; and (3) entry into a contract to be performed in whole or in part by either party in this State.[1]  Moreover, Edward argues Boundary House possessed the requisite minimum contacts to satisfy due process.  Upon examination of Edward Cribb's contract with Boundary and Boundary's presence in the state, we believe Edward met his burden at this stage in the proceeding to defeat a 12(b)(2) motion to dismiss for lack of personal jurisdiction over Boundary, Callahan, and Spatholt.

### A. Boundary as a Business Entity

Based on our courts' recent trend of compressing a personal jurisdiction analysis into a due process assessment only, our sole question is whether the exercise of personal jurisdiction

---

1. These activities correspond to sections 1, 4, and 7 of the long arm statute, respectively.  S.C.Code Ann. § 36–2–803 (Supp.2008).

would violate due process. *Cockrell v. Hillerich & Bradsby Co.* 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005) ("Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process."); *Power Prods.*, 379 S.C. 423, 665 S.E.2d 660 (where our court assessed only a due process analysis to determine whether specific jurisdiction was proper). Accordingly, we must determine whether Boundary possesses minimum contacts with South Carolina so as not to offend due process. Under the two-pronged analysis, we must determine whether Boundary (1) had the requisite minimum contacts with South Carolina, without which, the court does not have the "power" to adjudicate the action, and (2) find the exercise of jurisdiction is reasonable or fair.

In support of Edward's assertion that Boundary possesses minimum contacts with South Carolina, he argues in execution of his contract with Boundary he was to provide planning and operation services. Edward maintains Boundary directed its activities toward South Carolina by soliciting and contracting with him to assist with designing and operating Boundary. In his affidavit Edward specifically maintains he: met with Spatholt and Callahan to discuss plans for Boundary while in Myrtle Beach; recruited Buddy as Boundary's general manager at Callahan's request from Myrtle Beach; met with Callahan and Spatholt several times at architect William R. Halasz's offices in Myrtle Beach to discuss and review prospective drawings, design, and layout of Boundary; contacted a Myrtle Beach restaurant planner who drafted proposed plans for the layout of Boundary's kitchen; met with representatives from Jacobi–Lewis Company to discuss the layout of Boundary's kitchen and revised and made changes to the layout at the meeting; closed Aspen Grill and thereafter Boundary hired former employees from Aspen Grill. As such, Edward contends Boundary purposefully availed itself of the benefits of doing business in South Carolina so that it could reasonably anticipate being haled into court here.

Our courts have held entering into a contract or mere negotiations inside South Carolina without more is not enough to establish minimum contacts. *Loyd & Ring's Wholesale Nursery, Inc. v. Long & Woodley Landscaping & Garden*

*Ctr., Inc.,* 315 S.C. 88, 92, 431 S.E.2d 632, 635 (Ct.App.1993) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478–79, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In *Loyd,* this court stated: "An individual's contract with an out-of-state party cannot alone establish sufficient minimum contact's in the other party's home forum." *Id.* Furthermore the court found: "The parties' prior negotiations, the consequences of their actions as contemplated by the parties, the terms of the contract, and the parties' actual course of dealings must be considered in evaluating whether a defendant purposefully established minimum contacts within the forum." *Id.*

Though Edward knew Callahan and Spatholt were planning on opening Boundary in Calabash, North Carolina, in performing his duties under his contract, Edward met with contacts in Myrtle Beach, South Carolina. In fact, Boundary admits it hired some service providers from Horry County to assist with planning the construction of the Restaurant in Calabash, North Carolina. Therefore, it appears Boundary, when forming its contract with Edward, contemplated Edward would use his Myrtle Beach contacts, including recruiting his son Buddy, to perform his duties of planning and designing Boundary. Therefore, because part of Edward's contract was to be performed in South Carolina, more than "mere negotiations" took place here.

This court has held South Carolina has jurisdiction over a party who entered into a contract that was to be partly performed within the State. *Atl. Wholesale Co. v. Solondz,* 283 S.C. 36, 37, 320 S.E.2d 720, 721 (Ct.App.1984). In *Solondz,* a New York resident, agreed to purchase silver from Atlantic Wholesale. *Id.* However, when Solondz later refused to pay for the silver, Atlantic Wholesale brought suit in South Carolina. *Id.* Our court held South Carolina had jurisdiction over the suit because "the evidence presented at the hearing on the motion to dismiss clearly show[ed] Solondz entered into a contract that was to be partly performed in South Carolina." *Id.* at 38, 320 S.E.2d at 722. Moreover this court found adjudicating the case within the State would not offend due process even though "Solondz ha[d] engaged in little activity in South Carolina ... [because] the length and duration of the activity of the nonresident in this State is not deemed important and need only be minimal when the plaintiff lives in the

forum state and the *cause of action arose out of the defendant's activities in this State.*" *Id.* at 39, 320 S.E.2d at 722 (internal citation omitted) (emphasis added).

We believe personal jurisdiction over Boundary is proper at this stage in the proceeding. Boundary negotiated Edward's contract in South Carolina, and it was within its contemplation that Edward would perform his part of the contract here. In fact, Boundary admitted hiring service providers from Horry County to assist with planning the construction of the restaurant in Calabash, North Carolina. Because the restaurant was not yet in existence at the time the contract was entered into, one would logically expect planning to occur at the most convenient location for the parties. Therefore, because part of Edward's contract was to be performed within South Carolina and because Edward's cause of action arose from a breach of that contract, we believe Boundary has sufficient minimum contacts with South Carolina such that it would expect to be haled into court here. Accordingly, we find Edward met his pretrial prima facie burden of demonstrating personal jurisdiction over Boundary in his complaint and affidavits. *Cockrell v. Hillerich & Bradsby Co.,* 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005). Therefore, Edward met the requirements of the power prong.

Lastly, we believe the fairness prong of the minimum contacts test is met as well. To reiterate, courts look at the following four factors in determining whether exercise of jurisdiction is reasonable or fair: (1) the duration of the defendant's activity in this State; (2) the character and circumstances of its acts; (3) the inconvenience to the parties; and (4) the State's interest in exercising jurisdiction. *State v. NV Sumatra Tobacco Trading, Co.,* 379 S.C. 81, 91, 666 S.E.2d 218, 223 (2008).

Under the first prong, Boundary's activity within the State was continuous. Edward maintains Callahan and Spatholt, as agents of Boundary, came to Myrtle Beach on several occasions to meet and discuss plans for opening Boundary with South Carolina businesses. Further, Edward, on behalf of Boundary, met with several Myrtle Beach contacts in performing his part of the contract. Therefore, the duration of Edward's activity in South Carolina was also continuous.

Second, the character and circumstances of the negotiations and meetings appear essential to Edward fulfilling his part of the contract. It appears several businesses within South Carolina were contacted and potentially hired to perform several tasks in starting up Boundary. Third, it would not significantly inconvenience either party to adjudicate the suit in South Carolina given Boundary's proximity.

Finally, South Carolina has an interest in providing redress for its citizens. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."); *Springmasters, Inc. v. D & M Mfg.*, 303 S.C. 528, 533, 402 S.E.2d 192, 195 (Ct.App.1991) ("South Carolina has a legitimate interest in providing its citizens a forum to resolve claims for breach of contract."). Further, enough business was conducted within the state to warrant adjudication of the suit here. *Contra Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*, 303 S.C. 502, 509, 402 S.E.2d 177, 181 (1991) ("[W]hile South Carolina has an interest in providing redress for its citizens, that interest is diminished when no business was transacted in this State and any contract formed was not to be performed in this State."). Because both prongs of the minimum contact analysis are met, adjudication of Edward's suit against Boundary in South Carolina would not offend due process.

### B. Callahan and Spatholt Individually

For reasons similar to the ones stated above, we believe Callahan and Spatholt individually possess enough minimum contacts with South Carolina so as not to offend due process. These contacts include the following: Callahan's 2003 meeting with Buddy Cribb at the Carolina Roadhouse in Myrtle Beach regarding Buddy's interest in helping start a restaurant; Callahan and Spatholt's two 2004 meetings with Edward Cribb at the Carolina Roadhouse in Myrtle Beach to discuss his interest in starting a new restaurant; and Callahan's meeting at Architect William R. Halasz's office in Myrtle Beach. Furthermore, Boundary filed its Articles of Incorporation on June 23, 2004, and according to Edward's complaint, Boundary opened for business on November 15, 2005. There-

fore, given Boundary was not yet in existence when Edward first began acting as a consultant, he was acting on Callahan and Spatholt's behalf rather than on Boundary's behalf in performing part of his contract. *See ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 242, 489 S.E.2d 470, 472 (1997) ("[A]uthorized acts of an agent are the acts of the principal."). Based on Callahan and Spatholt's contacts, the power prong of the minimum contacts analysis is met.

■ Moreover, the fairness prong is also satisfied. Callahan and Spatholt admit to hiring South Carolina businesses and meeting with them in Myrtle Beach. Second, the character and circumstances of their negotiations and meetings here appear essential to Boundary's successful opening. Third, it would not significantly inconvenience either party to adjudicate the suit in South Carolina given Boundary's proximity. Moreover, given our decision regarding personal jurisdiction over Boundary, Callahan and Spatholt will likely be in South Carolina on Boundary's behalf to defend Edward's suit. Finally, South Carolina has an interest in providing redress for its citizens and enough business was conducted within the state to warrant adjudication of the suit here. The circuit court's dismissal of Edward's suit for lack of personal jurisdiction in regards to Boundary as a business entity and Callahan and Spatholt individually is therefore

**REVERSED.**

HUFF and THOMAS, JJ., concur.