**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2459**

NIYA S. WALLACE,

        Plaintiff – Appellant,

    v.

YAMAHA MOTORS CORP, U.S.A.,

        Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Beaufort. David C. Norton, District Judge. (9:19-cv-00730-DCN)

Submitted: September 24, 2021                Decided: January 6, 2022

Before KING and RUSHING, Circuit Judges, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Gibney wrote the opinion, in which Judge King and Judge Rushing joined.

Ronnie L. Crosby, PETERS, MURDAUGH, PARKER, ELTZROTH, & DETRICK, PA, Hampton, South Carolina; Kathleen C. Barnes, BARNES LAW FIRM, LLC, Hampton, South Carolina, for Appellant. Robert L. Wise, BOWMAN AND BROOKE LLP, Richmond, Virginia; Stephanie M. Simm, BOWMAN AND BROOKE LLP, Miami, Florida, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GIBNEY, District Judge:

Niya Wallace suffered serious injuries in an accident that occurred while driving a motorcycle in Florida. After the accident, Wallace brought a products liability suit against the motorcycle distributor, Yamaha Motors Corporation, U.S.A. ("Yamaha"), in a South Carolina state court. After Yamaha removed the case to federal court, the district court dismissed the case for lack of personal jurisdiction because Wallace did not prove that her claims arose out of or related to Yamaha's contacts with South Carolina. Wallace argues that her claims meet this standard because Yamaha conducts extensive business in South Carolina, including selling the same model motorcycle as the motorcycle from her accident. Without more, however, Wallace's argument fails. We therefore affirm the district court's dismissal for lack of personal jurisdiction.

I.

A.

In March 2016, Wallace—a South Carolina resident—was driving a Yamaha YZF R6 motorcycle in Florida when a vehicle struck the motorcycle from the rear. Appellant's Br. 2; J.A. 31–33. Wallace alleges that the motorcycle's faulty design caused her to suffer severe burns in the accident. Appellant's Br. 2, 3. Wallace sued Yamaha in South Carolina state court for negligence, breach of warranty, and strict liability for defective design. *Id.* at 9–13. After removing the case to South Carolina federal court, Yamaha moved to dismiss for lack of personal jurisdiction. *Id.* at 14–15. The district court granted Yamaha's motion, dismissing Wallace's claims against Yamaha without prejudice. *Wallace v. Yamaha Motors Corp., U.S.A.*, No. 9:19cv730, 2019 WL 6170419 (D.S.C. Nov. 20, 2019).

2

## B.

Yamaha is incorporated and maintains its principal place of business in California. J.A. 34–36. It conducts business, however, all over the United States. In South Carolina, Yamaha maintains 106 authorized dealerships, *id.* at 246–55; sponsors product demonstrations, *id.* at 73, 123–25; markets and advertises its products, *id.* at 122–25; offers extended service contracts for its vehicles and products, *id.* at 123; and distributes the same make and model as the subject motorcycle, *id.* at 205–12.

Yamaha Motor Company, Ltd. ("YMC"), designed and manufactured the motorcycle from the accident in Japan. *Id.* at 34, 244. YMC then sold the motorcycle to Yamaha, which distributed it to an authorized dealership in Kansas. *Id.* at 5, 244. The dealership then sold the motorcycle in Kansas. *Id.* at 35, 244–45. Eventually, a South Carolina resident acquired the motorcycle. *Id.* at 35 (stating that Yamaha "has no information regarding how or when the Subject Motorcycle was acquired by the Plaintiff or [the South Carolina owner]"). In 2016, Wallace borrowed the motorcycle from its South Carolina owner and drove it to Florida, where the accident occurred. Appellant's Br. 2; J.A. 31–32.

## II.

This Court reviews de novo the legal basis for a district court's dismissal for lack of personal jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Koehler v. Dodwell*, 152 F.3d 304, 307 (4th Cir. 1998)); *cf. Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (factual findings reviewed for clear error). When the defendant properly challenges personal jurisdiction under

3

Federal Rule of Civil Procedure 12(b)(2), the plaintiff must prove the grounds for jurisdiction by a preponderance of the evidence. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). When a district court decides a personal jurisdiction challenge without an evidentiary hearing, however, the plaintiff need show only a prima facie case of personal jurisdiction.[1] *See Mylan Labs., Inc.*, 2 F.3d at 60. "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting *Combs*, 886 F.2d at 676).

## A.

In a personal jurisdiction analysis, (1) a state's long-arm statute must authorize the exercise of jurisdiction under the facts presented, and (2) the statutory assertion of personal jurisdiction must comply with due process. *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993). "Because South Carolina has interpreted its long-arm statute to extend personal jurisdiction to the constitutional limits imposed by federal due process, our inquiry must focus on due process." *See Foster v. Arletty 3 Sarl*,

---

[1] Yamaha argues that Wallace should have to prove the grounds for personal jurisdiction by a preponderance of the evidence because the parties "had a full and fair opportunity to present both 'relevant jurisdictional evidence and their legal arguments.'" Appellee's Br. 9 (quoting *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (finding that the district court properly applied the preponderance of the evidence standard even though the hearing did not involve live testimony because the district court provided the parties a fair opportunity to present relevant, substantial jurisdictional evidence and their legal arguments)). As explained below, Wallace fails to prove even a prima facie case of personal jurisdiction; as such, the Court need not determine whether the more stringent standard applies here.

278 F.3d 409, 414 (4th Cir. 2002) (citation omitted); *Sonoco Prods. Co. v. Inteplast Corp.*, 867 F. Supp. 352, 354 (D.S.C. 1994) ("Under South Carolina law, the first requirement [of personal jurisdiction] collapses into the second.").[2] Under a due process analysis, a court may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,    291–92 (1980) (explaining that this principle "protects . . . defendant[s] against the burdens of litigating in a distant or inconvenient forum" and "acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system").

Of the two types of personal jurisdiction—general and specific—Wallace asserts only that specific jurisdiction applies here.[3] Appellant's Br. 2.; *see Bristol-Myers Squibb*

_____

[2] Yamaha argues that Wallace waived the argument that South Carolina's long-arm statute applies by not addressing it in her brief and, in the alternative, that Wallace does not satisfy any of the enumerated statutory bases for the exercise of personal jurisdiction. It is Yamaha, though, that forfeited argument on the statutory requirement for personal jurisdiction by failing to raise it before the district court. J.A. 19–20 (conceding in its motion to dismiss that "South Carolina treats its long-arm statute as coextensive with the due process clause") (quoting *Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C. 2005)); *see Volvo Const. Equip. N.A., Inc. v. CLM Equip., Inc.*, 386 F.3d 581, 603 (4th Cir. 2004) ("Absent exceptional circumstances . . . we do not consider issues raised for the first time on appeal."). We decline to consider Yamaha's new argument on appeal.

[3] General jurisdiction permits a court to hear any and all claims brought against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A court may exercise general jurisdiction in a corporation's place of incorporation, a corporation's principal place of business, and any state where a corporation's "affiliations (Continued)

*Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear*, 564 U.S. at 919) (referring to general jurisdiction as "all-purpose" jurisdiction and specific jurisdiction as "case-linked" jurisdiction). To determine whether specific jurisdiction exists, the Court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 396 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002)).

For the first element, a defendant has availed itself of the privilege of conducting business in a state—and thus the benefits and protections of the state's laws—when the defendant "'deliberately' has engaged in significant activities within a [s]tate" or "has created 'continuing obligations' between [itself] and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984), and *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643, 648 (1950)). This standard "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or due to "the 'unilateral activity of another party or a third person.'" *Id.* at 475

---

with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citing *Goodyear*, 564 U.S. at 919).

(quoting *Keeton*, 465 U.S. at 774, *World-Wide Volkswagen*, 444 U.S. at 299, and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

For the second element—whether a plaintiff's claims arise out of a defendant's activities directed at the state—"there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers*, 137 S. Ct. at 1781 (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* (citing *Goodyear*, 564 U.S. at 930 n.6).

For the third element, the Court considers the constitutional reasonableness of exercising jurisdiction by evaluating several factors, to include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King*, 471 U.S. at 477). In other words, the exercise of jurisdiction should not "make litigation 'so gravely difficult and inconvenient' that a party is unfairly at a 'severe disadvantage' in comparison to his opponent." *Id.* (quoting *Burger King*, 471 U.S. at 478).

B.

1.

Neither party disputes that Yamaha satisfies the first and third elements of the specific personal jurisdiction analysis. Yamaha purposefully availed itself of South Carolina's market by, among other activities, marketing, advertising, and providing extended service contracts for its products there; permitting authorized Yamaha dealerships to operate there; sponsoring product demonstrations there; and maintaining a membership in the Chamber of Commerce there.[4]

Yamaha's continued contacts with South Carolina similarly satisfy the third element of the analysis—constitutional reasonableness. Because Yamaha conducts extensive business in South Carolina, litigating this suit in South Carolina would not place Yamaha at a severe disadvantage, nor would it cause Yamaha grave difficulty or inconvenience. Further, South Carolina certainly has an interest in adjudicating a dispute in which one of its residents suffered harm. As far as Wallace's interests, this case appears before us because of her desire to obtain convenient and effective relief in a South Carolina court.

---

[4] Under the stream of commerce theory, a state may exercise personal jurisdiction over a manufacturer or distributor who has not entered the forum if the manufacturer or distributor "seek[s] to serve" the state's market. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881–82 (2011) (quoting *World-Wide Volkswagen*, 444 U.S. at 295) ("[A] defendant's placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers in the forum State' may indicate purposeful availment." (quoting *World-Wide Volkswagen*, 444 U.S. at 298)). Wallace argues that the district court should have considered this theory in evaluating purposeful availment. Appellant's Br. 28–29. But the parties agree on appeal, and we have also found, that Yamaha has purposefully availed itself of the privilege of conducting business in South Carolina. We need not define the bounds of the stream of commerce theory here.

Considering the relevant factors, the exercise of jurisdiction over Yamaha is constitutionally reasonable.

2.

This leaves us to evaluate the only element the parties dispute: whether Wallace's claims arise out of the conduct Yamaha has directed at South Carolina. Wallace argues that Yamaha's general contacts with South Carolina—namely, selling the same model motorcycle as the motorcycle from the accident—subject Yamaha to specific jurisdiction in this case. But specific jurisdiction is not simply a lower standard for general jurisdiction, and Wallace offers no facts to connect her specific claims to Yamaha's actions in South Carolina.[5] *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("Specific jurisdiction is different [from general jurisdiction]: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. . . . [T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" (third alteration in original) (quoting *Bristol-Myers*, 137 S. Ct. at 1780)). The motorcycle from the accident was designed elsewhere, manufactured elsewhere, distributed elsewhere, and sold elsewhere. The accident that resulted in

---

[5] Yamaha performs these activities (for example, selling Yamaha products to dealerships, providing expertise to the dealerships, and administering extended service contracts for Yamaha products) in every state. J.A. 112–13. As the South Carolina district court succinctly stated, permitting the court to exercise jurisdiction over Yamaha based on these facts "would be to subject every defendant to specific jurisdiction in every forum where it sells and markets a product for claims involving a different product of the same model." *Wallace*, 2019 WL 6170419, at *4; *see Bristol-Myers*, 137 S. Ct. at 1780 ("For specific jurisdiction, a defendant's general connections with the forum are not enough.").

9

Wallace's injuries took place elsewhere. And the record remains silent as to how the motorcycle—originally purchased by a consumer from an authorized Yamaha dealership in Kansas—ended up in South Carolina. In short, Wallace has not shown any connection between Yamaha's business in South Carolina and the accident that gives rise to her claims.

The Supreme Court has made clear that the exercise of specific jurisdiction in a products liability case requires a stronger connection than simply doing business in a state. In *Bristol-Myers*, for example, nonresident plaintiffs sued a drug manufacturer in California. 137 S. Ct. at 1775. The nonresident plaintiffs did not live in California, did not buy the drug in California, did not take the drug in California, and did not suffer injuries from the drug in California. The Supreme Court found that the California courts lacked specific personal jurisdiction over the nonresident plaintiffs' claims because "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* at 1781, 1782 ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.").

As with the nonresident plaintiffs in *Bristol-Myers*, neither the injury in this case nor Yamaha's conduct related to the product that allegedly caused the injury took place in South Carolina, the forum state. The only material distinction between Wallace and the nonresident plaintiffs in *Bristol-Myers* is that Wallace resides in the forum state. But Wallace's residence does not dictate whether the South Carolina courts can properly exercise personal jurisdiction over Yamaha; rather, "the relationship must arise out of

10

contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475 (emphasis in original)).

Wallace contends that *Ford* changes the balance. In *Ford*, the Supreme Court considered two consolidated products liability actions stemming from car accidents where the resident plaintiffs had accidents in the forum states. 141 S. Ct. at 1022. The Supreme Court found that, even though the plaintiffs did not purchase the vehicles in the forum states, the forum states had specific jurisdiction over Ford where Ford had "systematically served a market" in the forum states "for the very vehicles that the plaintiffs alleged malfunctioned and injured them *in those states*." *Id.* at 1028 (emphasis added). The Court noted that the specific jurisdiction inquiry does not "requir[e] proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct," but that specific jurisdiction attaches "when a company like Ford serves a market for a product in the forum State *and the product malfunctions there*." *Id.* at 1026 (emphasis added). In *Ford*, the Court repeatedly emphasized that the injuries occurred in the forum

states. Perhaps *Ford* would allow Wallace to sue Yamaha in Florida, but it does not allow her to sue Yamaha in South Carolina.

Without any specific facts tying Yamaha's in-state conduct to the litigation resulting from the out-of-state accident, we conclude that Wallace's claims do not arise out of or relate to Yamaha's South Carolina-directed conduct.[6]

III.

For the foregoing reasons, we affirm the decision of the district court.

*AFFIRMED*

---

[6] Wallace argues that the district court "err[ed] in holding the extent of Yamaha's purposefully availing activities in South Carolina is not relevant to the relatedness requirement." Appellant's Br. 1. But it is the relationship between Yamaha's activities and Wallace's claims, not the volume of Yamaha's activities, that matters here. *See Wallace*, 2019 WL 6170419, at *3 ("The number and extent of Yamaha's contacts with South Carolina . . . does nothing to change the *Bristol-Myers* requirement that Wallace's claims *must* arise out of or relate to Yamaha's contacts with the forum state." (emphasis in original)). We review Yamaha's South Carolina-directed conduct to determine whether Wallace's claims arise out of or relate to those activities and ultimately conclude, as the district court did, that they do not.

12